# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

TONY K. MCDONALD, JOSHUA
B. HAMMER, and MARK S.
PULLIAM,

*Plaintiffs*,

v.

JOE K. LONGLEY, et al. ,

*Defendants*.

Case No. 1:19-cv-219-LY

**ORAL HEARING REQUESTED**

## PLAINTIFFS' MOTION FOR
## PRELIMINARY INJUNCTION

William S. Consovoy
Jeffrey M. Harris
Cameron T. Norris
Samuel D. Adkisson
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Plaintiffs*

March 25, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

RULE CV-7(i) STATEMENT ..................................................................................................... iv

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

I.  Texas Law Requires Those Who Want To Practice Law To Join The Bar. ............................. 2

II.  The Bar's Use Of Compelled Dues For Non-Regulatory Activities. ............................ 2

III. The Bar's Constitutionally Inadequate Opt-Out Procedures. ............................ 4

ARGUMENT ................................................................................................................................ 5

I.  Plaintiffs Are Likely To Prevail On The Merits Of All Their Claims. ............................ 5

  A.  The First Amendment prohibits Texas from compelling Plaintiffs to join and support an organization that engages in political and ideological activities. ............................ 5

  B.  In the alternative, the First Amendment prohibits compelled support for the Bar's activities beyond the regulation of attorneys. ............................ 7

  C.  The Bar's opt-out procedures for identifying non-chargeable expenses violate the First Amendment. ............................ 8

II.  Plaintiffs Satisfy The Remaining Preliminary-Injunction Criteria. ............................ 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Abood v. Detroit Bd. of Ed.*,
  431 U.S. 209 (1977) .................................................................................... 5, 8

*Byrum v. Landreth,*
  566 F.3d 442 (5th Cir. 2009) .......................................................................... 10

*Chicago Teachers Union v. Hudson,*
  475 U.S. 2929 (1986) ................................................................................... 4, 10

*Christian Legal Soc'y v. Walker,*
  453 F.3d 853 (7th Cir. 2006) .......................................................................... 10

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ........................................................................................ 6

*Ellis v. Bhd. of Ry., Airline & S.S. Clerks,*
  466 U.S. 435 (1984) ........................................................................................ 9

*Elrod v. Burns,*
  427 U.S. 347 (1976) ....................................................................................... 10

*Harris v. Quinn,*
  573 U.S. 616 (2014) ......................................................................... 1, 2, 5, 6, 7, 9

*In re Petition for a Rule Change to Create a Voluntary State Bar,*
  841 N.W.2d 167 (Neb. 2013) ........................................................................ 5, 6

*Janus v. AFSCME,*
  138 S. Ct. 2448 (2018) ..................................................................... 1, 5, 6, 7, 8, 9

*Keller v. State Bar of California,*
  496 U.S. 1 (1990) ..................................................................................... 5, 6, 7, 10

*Knox v. Services Emps. Int'l Union,*
  567 U.S. 298 (2012) ....................................................................... 1, 6, 8, 9, 10

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London,*
  600 F.3d 562 (5th Cir. 2010) ............................................................................ 5

*Roberts v. United States Jaycees,*
  468 U.S. 609 (1984) ........................................................................................ 5

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
  732 F.3d 535 (5th Cir. 2013) .......................................................................... 10

*United States v. United Foods*,
    533 U.S. 405 (2001) ........................................................................................................... 8

**Statutes**

Tex. Gov't Code § 81.011 ...................................................................................................... 2

Tex. Gov't Code § 81.051(b) ................................................................................................. 2

Tex. Gov't Code § 81.052 ...................................................................................................... 2

Tex. Gov't Code § 81.053 ...................................................................................................... 2

Tex. Gov't Code § 81.054 ................................................................................................... 2, 3

## RULE CV-7(i) STATEMENT

Plaintiffs have conferred with counsel for Defendants, who stated that Defendants oppose this motion because they believe their current practices are constitutional.

In addition to this Motion for Preliminary Injunction, Plaintiffs are simultaneously filing a Motion for Partial Summary Judgment on Liability. The two motions turn on the same three underlying questions of law: (1) whether compelled association with the Texas Bar is unconstitutional, especially in light of its political and ideological activities; (2) whether compelled support for the Bar's activities beyond attorney regulation violates the Constitution; and (3) whether the Bar's procedures for identifying non-chargeable expenses violate the Constitution.

Plaintiffs are simultaneously moving for a preliminary injunction and partial summary judgment on liability to ensure that the Court needs to address the relevant legal questions just once. Plaintiffs sought to reach agreement with Defendants on an expedited summary-judgment schedule, but Defendants were unwilling to agree to any expedition.

## INTRODUCTION

The First Amendment protects the right to "eschew association for expressive purposes." *Janus v. AFSCME*, 138 S. Ct. 2448, 2463 (2018). Yet Texas law requires attorneys to join and financially support the Texas State Bar ("Bar"). This violates the First Amendment for three independent reasons.

*First*, when an organization engages in political and ideological activities—as the Bar plainly does—the government cannot compel individuals to *join* the organization or fund *any* of its activities.

*Second*, coercing attorneys to support any of the Bar's activities beyond its regulatory and disciplinary functions violates the First Amendment. Compelled bar dues can be used only for the limited purpose of attorney regulation—*i.e.*, "proposing ethical codes and disciplining bar members." *Harris v. Quinn*, 573 U.S. 616, 655 (2014). Yet the Bar uses compelled dues to fund countless non-regulatory activities, including but not limited to, lobbying, diversity initiatives, and "access to justice" programs.

*Third*, under *Janus* and *Knox v. SEIU*, 567 U.S. 298 (2012), an organization that collects compelled dues must adopt procedures to ensure that members *opt-in* to supporting political and ideological activities, rather than charging everyone the fee by default and expecting objectors to *opt-out*. The Bar does the opposite; it unconstitutionally forces *all* members to subsidize its political and ideological activities unless they pursue a complex and burdensome administrative process to seek a refund. *See* Exs. W, EE.[1] This mechanism violates clear Supreme Court precedent.

Plaintiffs are active and inactive members of the Bar who object to this coerced speech and association. *See* McDonald, Hammer, and Pulliam Decls. To protect Plaintiffs' constitutional rights while this litigation is pending, the Court should enter a preliminary injunction prohibiting the Bar from disciplining them for failing to associate with or financially support the Bar during the pendency of this litigation.

---

[1]    All exhibits refer to the Adkisson Declaration.

## BACKGROUND

### I.     Texas Law Requires Those Who Want To Practice Law To Join The Bar.

The Bar is a public corporation operating under the administrative control of the Supreme Court of Texas. *See* Tex. Gov't Code § 81.011. Individuals who wish to practice law in Texas are compelled to join the Bar in order to engage in their profession. *Id.* § 81.051(b). An attorney who is eligible to practice law in Texas but is not currently practicing may move to "inactive" status to preserve his future ability to return to active practice. *Id.* §§ 81.052, 81.053. All attorneys licensed to practice in Texas must pay dues to the Bar. *Id.* § 81.054. Those dues are currently $68 for attorneys licensed 0 to 3 years, $148 for attorneys licensed 4 to 5 years, $235 for attorneys licensed more than 5 years, and $50 for inactive members. Exs. A, D. In the year ending May 31, 2017, the Bar collected more than $20 million in coerced dues, plus another $25 million from other activities. Ex. E.

### II.    The Bar's Use Of Compelled Dues For Non-Regulatory Activities.

Although the Supreme Court has held that bar associations may use coerced dues only for regulatory functions such as "proposing ethical codes and disciplining bar members," *Harris*, 573 U.S. at 655, the Bar engages in countless activities that extend beyond any regulatory/disciplinary functions.

***Legislative Program.*** The Bar maintains a Governmental Relations department that "serves as the Bar's liaison to the Texas Legislature and other state and federal governmental entities." Ex. B. The Bar's 2019 legislative program includes proposed legislation on wide-ranging matters including construction law, family law, LGBT law, poverty law, real estate law, and trusts. Ex. C. The Bar is currently lobbying for the passage of forty-seven proposed bills in these areas. *Id.*

***Diversity Initiatives.*** The Bar has an "Office of Minority Affairs." The goals of this office include "serv[ing] minority, women, and LGBT attorneys and legal organizations in Texas" and "enhanc[ing] employment and economic opportunities for minority, women, and LGBT attorneys in the legal profession." Ex. F. The Office of Minority Affairs engages in "Minority Initiatives," which

are "ongoing forums, projects, programs, and publications dedicated to our diversity efforts." *Id.* All of the Bar's "diversity" initiatives are premised on the assumption that is appropriate to offer certain services targeted at individuals of a particular race, gender, or sexual orientation. Exs. G, H, I.

*Access to Justice Programs.* The Bar maintains a "Legal Access Division" that "offers support, training, publications, resource materials, and more to legal services programs and pro bono volunteers." Ex. M. During the 2018-2019 budgetary year, the Bar spent over $1 million on Legal Access Division programs. Ex. L. It plans to spend over $1.5 million next year. Ex. K. In 2018-2019, the Bar spent an additional $827,000 funding an "Access to Justice Commission," and it intends to spend a similar amount next year. *See* Exs. L, K. The Commission engages in political and ideological activities, including lobbying. *See* Ex. R. In connection with its "access to justice efforts," the Bar also maintains a directory of "volunteer and resource opportunities," which "provides a comprehensive list of training, volunteer, and donation opportunities for attorneys who would like to assist with migrant asylum and family separation cases." Ex. O. Every relevant entry promotes a group that seeks to assist undocumented immigrants in remaining in the United States. *Id.*; *see also* Ex. P.

*Legal Services Fee.* Texas law requires certain attorneys to pay a $65 legal services fee. Tex. Gov't Code § 81.054(j)-(k). This fee is imposed only on a subset of attorneys in active private practice in Texas. *Id.* The $65 legal services fee has nothing to do with regulating the profession, as its *sole* purpose is to fund legal services for certain groups. Half of the fees are allocated to the Supreme Court Judicial Fund, which provides civil legal services to the poor, and the other half goes to the Fair Defense Account of the State's general reserve fund for indigent criminal defense. *See id.* § 81.054(c). This fee is effectively a compelled charitable contribution imposed only on certain attorneys.

*Other Activities.* The Bar spends attorneys' compelled dues on countless other non-regulatory activities as well. The Bar hosts an annual Convention at which political and ideological activities are rampant. During the 2018 Convention, for example, topics included "LGBT Pathways

to the Judiciary" and "Legislative Update [on] Proposed Rulemaking Under the Trump Administration." Ex. Q at 10-32. The Bar also funds ideologically-charged Continuing Legal Education programs, such as "The Paradox of Bodily Autonomy: Sex Confirming Surgeries and Circumcision." Ex. N. It spends over half-a-million dollars on advertising each year. *See* Ex. L ($761,000 in FY 2018-2019). And it publishes and exercises editorial control over its "official publication," the *Texas Bar Journal*, on which it spends over $1.5 million per year. Exs. L, S.

## III.    The Bar's Constitutionally Inadequate Opt-Out Procedures.

If a state bar engages in any political or ideological activities, it must implement appropriate safeguards to ensure that individuals are not compelled to support and associate with activities with which they disagree. Supreme Court precedent mandates the use of procedures by which members must *opt in* before their funds are used to subsidize political and ideological activities, rather than charging for these activities by default and forcing members to *opt out*. Yet the President of the Bar recently admitted that the Bar "has had an 'opt out' refund procedure for decades." Ex. T.

The Bar's opt-out procedures are convoluted and burdensome. If an individual wants to opt out of paying for political and ideological activities, he must first pay his dues in full. He can then "object" and "seek a refund of a pro rata portion of his or her dues expended." Exs. W, EE. The executive director of the Bar has the sole "discretion" to issue refunds, with no right of appeal. *Id.* And refunds are given only for "the convenience of the State Bar," not because "the challenged activity was or would not have been within the purposes of or limitations on the State Bar." *Id.* The Bar also fails to provide a "*Hudson* notice" that shows members which portions of their dues are paying for regulatory functions and which portions are paying for non-chargeable political and ideological activities. *See Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986).

**ARGUMENT**

A plaintiff seeking a preliminary injunction must show that "'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 568-69 (5th Cir. 2010).

**I.       Plaintiffs Are Likely To Prevail On The Merits Of All Their Claims.**

> **A.       The First Amendment prohibits Texas from compelling Plaintiffs to join and support an organization that engages in political and ideological activities.**

Texas law requires all attorneys to join the Bar as a condition of practicing law. This is unconstitutional. "The right to eschew association for expressive purposes" is protected by the First Amendment. *Janus*, 138 S. Ct. at 2463. All citizens have the constitutional "freedom not to associate." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984). And "compelling individuals to mouth support for views they find objectionable," including by compelled association, "violates that cardinal constitutional command." *Janus*, 138 S. Ct. at 2463. Compelled membership in state bar organizations infringes on Plaintiffs' First Amendment rights, *see id.* at 2463-64, and cannot be justified by the State's narrow interest in regulating the legal profession, *Harris*, 573 U.S. at 655. Indeed, nearly twenty states regulate the legal profession without resorting to compulsory bar membership. *See In re Petition for a Rule Change to Create a Voluntary State Bar*, 841 N.W.2d 167, 171 (Neb. 2013).

Plaintiffs cannot be compelled to join the Bar even if *Keller v. State Bar of California*, 496 U.S. 1 (1990), remains good law (which is doubtful).[2] Nothing in *Keller* holds that a state can compel bar membership when the bar engages in political or ideological activities. To the contrary, the Supreme Court expressly declined to address that question, explaining that because the lower courts "did not

---

[2]      *Keller* relied heavily on *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977), which the Supreme Court explicitly overruled in *Janus*, 138 S. Ct. at 2478-79. To the extent this Court believes *Keller* still controls with respect to Plaintiffs' challenge to compelled bar membership, Plaintiffs reserve their right to ask the Supreme Court to overturn that decision.

address this claim," it would not "do so in the first instance." *Keller*, 496 U.S. at 17. But that question is now squarely before this Court, which should hold that Plaintiffs cannot be compelled to associate with a state bar that engages in political or ideological activities.

The Supreme Court has held that compelled bar membership burdens First Amendment rights even if the bar merely *regulates* attorneys. *See Keller*, 496 U.S. at 13-17. Here, however, Texas compels association with a Bar that pervasively engages in political and ideological activities. *Supra* at 2-4. Since the First Amendment strictly protects "[t]he right to eschew association for expressive purposes," compelled membership in the Bar unquestionably burdens Plaintiffs' constitutional rights. *Janus*, 138 S. Ct. at 2463.

The question then becomes whether that burden is justified. The relevant standard here is strict scrutiny, which requires narrow tailoring and a compelling government interest. *See Citizens United v. FEC*, 558 U.S. 310, 340 (2010). But even if this Court applies "exacting scrutiny" instead of strict scrutiny, compulsory association with an ideological bar still must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465; *Harris*, 573 U.S. at 648-49; *Knox*, 567 U.S. at 310.

But whatever level of scrutiny this Court applies, compelled membership in the Bar fails it. The only compelling interests the Supreme Court has recognized in the context of bar organizations are "regulating the legal profession" and "improving the quality of legal services." *Keller*, 496 U.S. at 13-14. Furthering these limited interests does not require compelled membership in a Bar that engages in political and ideological activities, as shown by the nearly twenty states that regulate attorneys directly, without compelled bar membership. *See In re Petition*, 841 N.W.2d at 171. Moreover, Texas has at least three alternatives that are "significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465. *First*, the Bar could stop engaging in political and ideological activities. *Second*, the Bar could continue engaging in political and ideological activities but stop compelling attorney

membership. *Third*, the Bar could be split into two components—a compulsory section that regulates attorneys and a voluntary foundation that engages in all other activities.

> ### B. In the alternative, the First Amendment prohibits compelled support for the Bar's activities beyond the regulation of attorneys.

At a minimum, this Court should hold that Plaintiffs cannot be coerced to support any of the Bar's activities beyond its regulatory and disciplinary functions. "[F]reedom of speech includes both the right to speak freely and the right to refrain from speaking at all," and compelled subsidization of speech "seriously impinges on First Amendment rights." *Janus*, 138 S. Ct. at 2463-64. In the context of mandatory bar associations, the only compelling interests the Supreme Court recognizes are "regulating the legal profession" and "improving the quality of legal services." *Keller*, 496 U.S. at 14. In practice, this means state bars may use coerced dues only to fund activities "connected with proposing ethical codes and disciplining bar members." *Harris*, 573 U.S. at 655; *Keller*, 496 U.S. at 16.

Instead of respecting these limits, however, the Bar treats Texas attorneys as little more than a piggy bank to fund a wide range of programs, services, initiatives, lobbying, and other activities that sweep far beyond any regulatory or disciplinary functions. *See supra* 2-4. For example, the Bar runs a lobbying program that advocates for changes to Texas law. Exs. B, C, J. The Bar's legislative agenda ranges from the definition of marriage to child custody arrangements and trust law. *See* Exs. C, X, Y, Z, AA, BB. Yet lobbying is the paradigmatic example of what mandatory bar associations *cannot* do. *See Janus*, 138 S. Ct. at 2481 ("reject[ing] ... out of hand" the argument that "costs of lobbying" are chargeable); *Keller*, 496 U.S. at 15-16 (finding it "clear" that "compulsory dues may not be expended to endorse or advance a gun control or nuclear weapons freeze initiative").

The Bar also uses compelled dues to fund extensive "diversity initiatives" and has an entire "Office of Minority Affairs." Exs. F, G, H, I, K, L. It hosts an annual Convention featuring sessions such as "Texas Transgender Attorneys: A View from the Bar." Ex. Q. It also hosts ideologically-charged CLE sessions like "Intersectionality: The New Legal Imperative" and "The Paradox of Bodily

Autonomy: Sex Confirming Surgeries and Circumcision." Ex. N. These are precisely the sort of "sensitive political topics" of "profound value and concern" that the government cannot compel private individuals to subsidize. *Janus*, 138 S. Ct. at 2476.

Moreover, the Bar's Access to Justice Division, Access to Justice Commission, and Texas's $65 Legal Services Fee are effectively compelled charitable contributions. *See supra* at 3; Exs. O, P. While pro bono efforts are important, they have nothing to do with the *regulation* of attorneys; those efforts are also often extremely political or ideological, such as when the Bar seeks to facilitate legal representation for undocumented immigrants. *See* Exs. O, P. Nor is there any compelling interest in forcing attorneys to spend over $1.5 million funding the Bar's "official" magazine. Exs. K, L, S; *see United States v. United Foods*, 533 U.S. 405, 411 (2001) ("First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech on the side that it favors.").

The Supreme Court has recognized that drawing a precise line between permissible and impermissible expenditures often seems "impossible." *Janus*, 138 S. Ct. at 2481. Indeed, that is why the Court overruled *Abood*. But by strictly limiting the Bar's use of coerced dues to disciplinary and regulatory functions, this Court can enforce a workable rule that is firmly grounded in Supreme Court precedent. In all events, to the extent the line is unclear between permissible and impermissible uses of compelled dues, the side that "should bear [the] risk" is the one "whose constitutional rights are not at stake"—*i.e.*, the Bar. *Knox*, 567 U.S. at 321.

**C.    The Bar's opt-out procedures for identifying non-chargeable expenses violate the First Amendment.**

Finally, independent of the two arguments raised above, the Bar's procedures for separating chargeable and non-chargeable expenses are woefully inadequate and fail to ensure that members are not coerced into funding the Bar's many political and ideological activities.

*Opt-Out Policy.* The Bar's President concedes that the Bar "has had an 'opt out' refund procedure for decades." Ex. T. That type of procedure flouts Supreme Court precedent. In *Knox*, the Court explained that "the difference between opt-out and opt-in schemes is important" because opt-out systems "create[] a risk that the fees paid by [those who object to certain activities] will be used to further political and ideological ends with which they do not agree." *Knox*, 567 U.S. at 312, 322. In *Janus*, the Court reaffirmed that "clear[]" and "affirmative[]" consent is needed before an association can use coerced fees to support its political and ideological activities. 138 S. Ct. at 2486.

The Bar's convoluted opt-out procedures, *see supra* at 4, are flatly contrary to *Janus* and *Knox*. It is undisputed that the Bar neither seeks nor obtains attorneys' affirmative consent before exacting compelled dues for political and ideological activities. The Bar also flouts the Supreme Court's instruction that it may not adopt procedures that effectively require objectors to "lend the [Bar] money to be used for political [and] ideological ... purposes." *Knox*, 567 U.S. at 303. Where, as here, members are required to first pay dues and then seek refunds, "there is at least a risk that, at the end of the year, unconsenting nonmembers will have paid either too much or too little." *Id.* at 321. Objectors should never have to "bear this risk" because of the "constitutional rights ... at stake." *Id.* Indeed, a bar organization "cannot be allowed to commit dissenters' funds to improper uses even temporarily." *Id.* "By exacting and using full dues, then refunding months later the portion that it was not allowed to exact in the first place, the [Bar] effectively charges the employees for activities that are" unconstitutional. *Ellis v. Bhd. of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 444 (1984).

The Bar has adopted exactly this sort of impermissible refund policy. It charges all attorneys full-freight upfront and then requires objectors to "seek a *refund* of a pro rata portion of his or her dues *expended*." Exs. W, EE (emphasis added). And even then, any refunds are at the sole "discretion" of the Bar's Executive Director, with no right of appeal. *Id.* This is unconstitutional. *Harris*, 475 U.S. at 306-07; *Knox*, 567 U.S. at 313.

*Failure to Provide* **Hudson** *Notice.* Finally, compounding the constitutional flaws of its opt-out and refund procedures, the Bar also fails to provide Plaintiffs with a constitutionally sufficient breakdown of its spending. In *Keller*, the Supreme Court explained that mandatory bar associations must provide breakdowns of their chargeable (regulatory/disciplinary) and non-chargeable (political /ideological) expenditures so that attorneys can choose not to fund political and ideological activities. *Keller*, 496 U.S. at 17; *see also Hudson*, 475 U.S. at 306 ("[P]otential objectors [must] be given sufficient information to gauge the propriety of" the portion of dues they are compelled to pay). The Bar wantonly disregards this requirement. It treats 100% of its expenses as chargeable, even though it engages in activities that are unquestionably political or ideological, such as legislative advocacy and diversity initiatives. This is a black-letter violation of *Keller*, *Knox*, and *Hudson*.

## II.   Plaintiffs Satisfy The Remaining Preliminary-Injunction Criteria.

Because Plaintiffs are likely to prevail on their First Amendment claims, the remaining elements of the preliminary-injunction analysis—irreparable harm, balancing of the equities, and the public interest—all favor granting preliminary relief. *See Byrum v. Landreth*, 566 F.3d 442, 445-47 (5th Cir. 2009); *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Even "'minimal'" First Amendment violations "'constitute[] irreparable injury,'" and preventing them is "'always in the public interest.'" *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Nor is the Bar "harmed" by an injunction that stops it from "violat[ing] ... First Amendment rights"—something it has no right to do. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006). And this Court's intervention is plainly needed to protect Plaintiffs' constitutional rights, as the Bar continues to vigorously defend its unconstitutional policies, most recently in a 20-page letter to the Attorney General sent on February 20, 2019. Ex. DD. Finally, the deadline for Plaintiffs to pay their 2019-2020 Bar dues is June 1. Late penalties and suspension begin September 1. An expeditious decision from this Court is thus critical to ensuring Plaintiffs are not unconstitutionally coerced into funding even more of the Bar's activities.

**CONCLUSION**

The Court should grant the motion for a preliminary injunction and enjoin Defendants (1) from taking any action to investigate, threaten, or punish Plaintiffs for failing to associate with the Bar during the pendency of this action; and (2) from taking any action to investigate, threaten, or punish Plaintiffs for failing to pay bar dues or the legal services fee during the pendency of this action.


Respectfully submitted,

Dated: March 25, 2019             _/s/ Cameron T. Norris_

William S. Consovoy
Jeffrey M. Harris
Cameron T. Norris
Samuel D. Adkisson
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on March 25, 2019, I electronically submitted the following document with the Clerk of the Court for the U.S. District Court for the Western District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent "Notice of Electronic Filing" to individuals who have consented in writing to accept this notice of service by electronic means. I also certify that I sent a copy of this document to counsel for Defendants by first-class and electronic mail:

>Thomas S. Leatherbury
>Vinson & Elkins
>Trammell Crow Center
>2001 Ross Avenue, Suite 3900
>Dallas, TX 75201
>tleatherbury@velaw.com

March 25, 2019

*/s/ Cameron T. Norris*
CAMERON T. NORRIS
*Counsel for Plaintiffs*
