UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TONY K. MCDONALD, JOSHUA B. HAMMER, and MARK S. PULLIAM,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOE K. LONGLEY, et al.,<br><br>*Defendants.* | Civil Action No. 1:19-cv-00219-LY |

## BRIEF OF *AMICUS CURIAE* TEXAS ATTORNEY GENERAL KEN PAXTON IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

### INTRODUCTION

"Compelling individuals to mouth support for views they find objectionable violates [the] cardinal constitutional command [against forced speech], and in most contexts, any such effort would be universally condemned." *Janus v. Am. Fed'n of State, Cty., and Mun. Emp., Council 31*, 138 S. Ct. 2448, 2463 (2018). It is a corollary "bedrock principle" of the First Amendment that, "except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." *Harris v. Quinn*, 573 U.S. 616, 656 (2014). For this reason, infringement of an individual's free speech rights by mandatory funding of ideological or political speech "cannot be tolerated" unless it passes, at a minimum, "exacting First Amendment scrutiny." *Id.* at 648–49 (internal citations and quotations omitted); *see also Janus*, 138 S. Ct. at 2464–65 (holding that compelled subsidization of private speech that does not satisfy "exacting" scrutiny is unconstitutional).

The State Bar of Texas violates the First Amendment rights of its members by compelling

financial support for ideological and political activities from its members without their affirmative consent. Just last term in *Janus*, the Supreme Court reiterated that when the government compels speech, "individuals are coerced into betraying their convictions." *Janus*, 138 S. Ct. at 2464. "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning," and requires even more "'immediate and urgent'" justification than a law requiring silence. *Id.* (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943)).

There is no such justification for the State Bar's current practice of forcing all licensed Texas attorneys to fund a host of ideological and political activities through mandatory membership dues.[1] The State Bar of Texas can perform its core activities of "regulating the legal profession and improving the quality of legal services"[2] in Texas without sacrificing the First Amendment rights of its members. The State Bar's current practice does not meet "exacting" scrutiny, much less "strict" scrutiny. At the very least, the State Bar may not use members' dues to fund these ideological and political activities *unless* the Bar first obtains each member's affirmative, voluntary, and fully-informed consent. *See Janus*, 138 S. Ct. at 2486. Anything less tramples on the core associational and free speech rights of Texas attorneys.

## INTEREST OF AMICUS CURIAE

Texas Attorney General Ken Paxton has the solemn responsibility of ensuring that the constitutional rights of Texas citizens are protected, even from Texas state governmental entities acting under color of state law. Attorney General Paxton also has an interest in ensuring that the

---

[1] These mandatory membership dues comprise "the primary source of revenue for the State Bar," amounting to more than $23 million during the 2018 fiscal year. *See* State Bar of Texas Financial Report, May 31, 2018.

[2] *See Keller v. State Bar of Cal.*, 496 U.S. 1, 13 (1990) (describing core functions of mandatory bar).

2

actions and policies of Texas state governmental entities comply with the U.S. Constitution. In addition, Attorney General Paxton is a member of the State Bar of Texas and has a vested interest in ensuring that the State Bar—which he is compelled to join and fund as a condition of his profession—does not violate the constitutional rights of its members.

## ARGUMENT

I.  **The First Amendment prohibits the State Bar of Texas's current practice of compelling subsidies for ideological and political speech.**

The Supreme Court spoke directly to whether the use of compulsory bar dues for ideological or political speech infringes on First Amendment rights in *Keller v. State Bar of California*, 496 U.S. 1 (1990).[3] There, the Court held that the California Bar violated the free speech rights of objecting members by compelling the funding of ideological and political activities that were not necessarily or reasonably related to the bar's core regulatory purposes. *Id.* at 15–16.

After *Keller*, the Supreme Court has continued to refine its jurisprudence on compelled subsidization of speech. The Court has now made explicit what was implicit in *Keller*: required funding of ideological and political activities in a mandatory association context is constitutionally justified only when there is, at a minimum, a compelling state interest and no significantly less restrictive means for advancing that compelling state interest. *See Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 310 (2012); *Harris*, 573 U.S. at 648–49; *Janus*, 138 S. Ct. at 2465. In short, to be constitutional, such required funding must at least meet the "exacting" First

---

[3] In an earlier case, *Lathrop v. Donohue*, the Supreme Court upheld the challenged compulsory bar membership as not violative of the plaintiff's right to freedom of association, but specifically declined to reach the question of any infringement of the plaintiff's right to free speech by compelled payments to support the bar's political activities. 367 U.S. 820, 843, 845–48 (1961).

3

Amendment scrutiny test. *See Janus*, 138 S. Ct. at 2465. If it does not, a mandatory association can only collect funds for such ideological or political activities with the free and voluntary consent of its members. *Id.* at 2486.

The State Bar's current practice of spending mandatory dues on the political or ideological activities challenged by the Plaintiffs without members' express consent cannot survive "exacting" scrutiny under the First Amendment, much less strict scrutiny. Accordingly, the State Bar's current practice is unconstitutional.

### A.  *Keller* prohibits the government from requiring attorneys to subsidize ideological and political activities of mandatory state bar associations that are not reasonably related or germane to the bar's core regulatory purposes.

In *Keller*, multiple members of the State Bar of California sued the bar for violating their free speech rights under the First Amendment by using mandatory bar fees to fund political and ideological activities that the plaintiffs opposed. *Keller*, 496 U.S. at 5–6. The California Supreme Court upheld a summary judgment ruling in favor of the bar, holding that the bar was a governmental entity and could use dues for any statutorily approved purpose. *Id.* at 6–7.

The U.S. Supreme Court rejected the treatment of the California bar's speech as "government" speech and determined that the bar was more like a union shop that members were compelled to join and that carried out functions for which there was a compelling state interest. *Id.* at 11–12. Applying the analysis of a union shop case, *Abood v. Detroit Bd. of Education*, 431 U.S. 209 (1977), *Keller* held that mandatory bar dues may be assessed to fund activities germane to the State's interest in "regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13–14. This could include "activities connected with disciplining members of the Bar or proposing ethical codes for the profession." *Id.* at 16. The bar could not, however, spend compulsory dues on "activities having political or ideological coloration which are not reasonably

related to the advancement of" those permissible regulatory goals. *Id.* at 15.

The Court recognized that while the line between the two could be difficult to discern at the margins, the bar clearly could not use mandatory dues to pay for obviously ideological or political activities, such as "to endorse or advance a gun control or nuclear weapons freeze initiative[.]" *Id.* at 16. Mandatory bars were required to have adequate constitutional protections in place to ensure that no member was required to pay for non-germane political or ideological speech. *Id.* at 16–17. But *Keller* passed on the question of whether attorneys could be "compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory financial support is justified[.]" *Id.* at 17.

*Harris v. Quinn* emphasized that *Keller* permits the assessment of mandatory dues only in very limited contexts. *Keller* "held that members of [the] bar could not be required to pay the portion of bar dues used for political or ideological purposes but that they could be required to pay the portion of the dues used for activities connected with proposing ethical codes and disciplining bar members." *Harris*, 573 U.S. at 655. As *Harris* clarified, *Keller* prohibits mandatory bars from compelling subsidies to fund speech for political or ideological purposes because such speech is not germane to the regulatory purposes of the bar.

> **B.     The Supreme Court has now established that government-compelled subsidies of speech in the mandatory association context must satisfy at least "exacting" scrutiny to be constitutional.**

Since its holding in *Keller*, the Supreme Court, through a series of decisions, clarified that compelled subsidization of speech in the mandatory association context must pass, at the very least, "exacting" scrutiny. Along the way, the Court overruled *Abood* and made clear that compulsory fees supporting ideological and political activities—such as those at issue here—implicate First Amendment concerns and are subject to constitutional scrutiny.

5

The Court first tried to create a more workable test to analyze whether challenged ideological or political activities were permissible. *See Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 519 (1991). *Lehnert* held that the only activities for which a union could charge objecting members were activities that were (1) "'germane' to collective-bargaining activity"; (2) "justified by the government's vital policy interest in labor peace and avoiding 'free-riders'" (the bases under *Abood* for upholding mandatory membership); and that (3) do "not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Id.*

By 2001, the Supreme Court was applying familiar First Amendment analysis to government compulsion of speech subsidies. *See United States v. United Foods, Inc.,* 533 U.S. 405, 411 (2001) ("[T]he compelled funding for the advertising must pass First Amendment scrutiny."). *Knox*, a union shop case governed by *Abood*, expressly stated that "compulsory subsidies for private speech are subject to exacting First Amendment scrutiny[.]" 567 U.S. at 310. The Court in *Knox* went on to criticize "opt-out" procedures as likely not meeting First Amendment requirements, and mandated a less-restrictive "opt-in" requirement for special assessments. *Id.* at 314, 317, 321. *Harris* severely criticized *Abood*'s germane/non-germane construct and the "opt-out" method meant to protect objecting employees. 573 U.S. at 637–38. *Harris* then declined to expand *Abood* to quasi-public employees and instead analyzed the compelled speech subsidies under "generally applicable First Amendment standards," applying "exacting" scrutiny. *Id.* at 646, 647–49.

Finally, in *Janus*, the Supreme Court considered whether *Abood* was "consistent with standard First Amendment principles[,]" analyzed the constitutionality of compelled subsidy of speech through agency fees under "exacting" scrutiny, and overruled *Abood*. 138 S. Ct. at 2463, 2464–65, 2486. *Janus* involved compelled agency fees imposed on non-union members who

6

objected to the political and ideological speech that was promulgated by the union as part of its core function of collective bargaining. *Id.* at 2461. After reviewing the "free-rider" and "labor peace" justifications provided as compelling state interests, *Janus* held that these reasons were either not a compelling state interest (avoiding "free-riders") or could be achieved through less restrictive means (labor peace). *Id.* at 2466. The compelled agency fees at issue then, failing to even meet the "exacting" scrutiny standard, were unconstitutional. *Id.* at 2465, 2478. As a result, the union had to have clear and affirmative consent from the employees before extracting fees. *Id.* at 2486. The Court explained that an employee's voluntary payment of the fees was a waiver of First Amendment rights and such waiver "cannot be presumed," but "must be freely given and shown by 'clear and compelling' evidence." *Id.* (citations omitted)

*Janus* criticized *Abood* for judging "the constitutionality of public-sector agency fees under a deferential standard that finds no support in our free speech cases" and failing to "independently evaluate the strength of the government interests" said to support the compelled fees or to "ask how well that provision actually promoted those interests or whether they could have been adequately served without impinging so heavily on the free speech rights of nonmembers." *Id.* at 2479–80. *Janus* observed that *Abood* failed to appreciate the inherently political nature of public sector collective bargaining and found *Abood*'s "germane/non-germane" construct to be unworkable. *Id.* at 2480–82. *Janus* also described *Abood* as an "outlier" and an "anomaly" in First Amendment jurisprudence as it failed to perform the "exacting" scrutiny analysis applied to other significant impingements on free speech rights. *Id.* at 2482–83.

Although *Janus* did not involve a *Keller* dispute, its holding informs the proper mode of analysis for free speech challenges to mandatory bar association fees.[4] *Janus* makes clear that in

---

[4] The Supreme Court signaled that *Janus* is applicable to challenges to mandatory bar dues and

the context of a mandatory association, compelled fees supporting political or ideological activities must be analyzed under a classic First Amendment scrutiny analysis. *Id.* at 2465. If such compelled funding does not meet at least "exacting" scrutiny, it is unconstitutional and may not be collected without members' affirmative consent. *Id.* at 2465, 2478, 2486.

II. **Because the State Bar activities at issue are ideological and political and do not meet "exacting" scrutiny, members may not be compelled to provide financial support for them. The bar's "opt-out" provisions also fail scrutiny analysis and are unconstitutional.**

The State Bar engages in activities—including legislative, lobbying, and ideologically informed programming—that cannot be supported by compulsory member dues. By compelling its members to finance political and ideological speech to which some of its members object, the State Bar runs afoul of the First Amendment by "[f]orcing free and independent individuals to endorse ideas they find objectionable[.]" *Id.* at 2464.

The challenged political and ideological activities by the State Bar are speech on matters of public concern that "occup[y] the highest rung of the hierarchy of First Amendment values and merit[ ] special protection." *Id.* at 2476 (internal citations and quotation marks omitted). The State Bar's compelled subsidy for such speech unquestionably inflicts a heavy burden on objecting bar members' free speech rights. *See id.* at 2477.

These ideological and political activities are not germane to the State Bar's core regulatory functions. Like the ideological and political activities found to violate free speech rights in *Keller*,

---

opt-out provisions with its recent remand to the Eighth Circuit in *Fleck v. Wetch*, "for further consideration in light of *Janus*[.]"139 S. Ct. 590 (2018) (mem. op.). The Court's disposition is consistent with the invitation of Penny Miller, the Clerk of the Supreme Court of North Dakota who noted in her brief in opposition to the petition for writ of certiorari, that "[i]f however, *Janus* expressly calls *Keller's* continuing vitality into question the Court should grant the instant Petition, vacate the Eighth Circuit's decision, and remand for reconsideration in light of *Janus*." Br. in Opp. for Penny Miller, *Fleck v. Wetch*, No. 17-886, 2018 WL 2979969, at *12.

activities such as lobbying for changes in various areas of the law or sponsoring ideological programming are not an essential part of the Bar's core functions of regulating the legal profession and improving the quality of legal services. *See Keller*, 496 U.S. at 13–15.[5] Objecting bar members cannot "be required to pay the portion of bar dues used for political or ideological purposes," but only for "the portion of the dues used for activities connected with proposing ethical codes and disciplining members." *Harris*, 573 U.S. at 655.

Nor is such compelled funding constitutionally justified under the "exacting" scrutiny standard. Compelled support for those activities does not serve "a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465 (internal citations and quotation marks omitted). Compelling bar members to give up their First Amendment rights in order to financially support ideological or political efforts is not justifiable as necessary in order to accomplish the State Bar's core regulatory functions. Such compelled support is by no means the "least restrictive means" by which the State Bar can regulate the legal profession and improve the quality of legal services.

Significantly less restrictive means can be utilized for the State Bar to carry out its core regulatory functions. The challenged activities can be funded by the Legislature, or through a voluntary association subsidized by the State, or through voluntary donations from attorneys paid along with mandatory dues. Bar members' free speech rights need not be sacrificed in order to

---

[5] If the State Bar asserts that those activities are germane and necessary to its core functions, that calls into question whether mandatory association with the State Bar at all is unconstitutional under *Janus*. The agency fees assessed against Janus were asserted to be "chargeable" fees, that is, fees for activities germane to the union's core function and so permitted under *Abood*. *Janus*, 138 S. Ct at 2461. *Janus* did not merely prohibit the collection of the portion of the agency fees used for the challenged activities, but held that the union could no longer compel a person to financially support the union at all. *Id.* at 2465, 2486. Thus, if the challenged activities here are an inherent and unavoidable part of the State Bar's core functions, *Janus* would seem to prohibit the collection of any dues from objecting members.

carry out the bar's ideological and political activities.

Because ideological and political activities cannot be constitutionally funded through mandated fees, dues may be used for such speech-laden activities only when a member voluntarily and affirmatively consents to waive his or her First Amendment rights, "and such a waiver cannot be presumed." *Janus*, 138 S. Ct. at 2486. The State Bar's current "opt-out" procedure presumes consent and is therefore unconstitutional. *See id.* at 2486; *see also Knox*, 567 U.S. at 314, 317, 321.

Thus, under both *Keller* and *Janus*, compelled payments for the State Bar's ideological and political activities violate bar members' First Amendment free speech rights and cannot stand. The State Bar's current opt-out procedures meant to protect members' free speech rights fail to do so and are likewise unconstitutional. Violation of members' First Amendment rights by the entity that is charged with regulating the legal profession is particularly unlawful and must not continue.

## CONCLUSION

The State Bar must stop violating its members' free speech rights through compelled funding of its ideological and political activities and must no longer collect any funds for these purposes absent a member's express, voluntary, and informed consent. The Court should grant Plaintiff's Motion for Partial Summary Judgment on Liability.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

/s/ _____
CYNTHIA A. MORALES

Assistant Attorney General
Financial Litigation and Charitable Trusts Division
*Attorney-in-Charge*
Texas Bar No. 14417420
cynthia.morales@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1414

*Counsel for Amicus Curiae Texas Attorney General Ken Paxton*

CERTIFICATE OF SERVICE

I, Cynthia A. Morales, hereby certify that on this 26th day of April, 2019, a true and correct copy of the foregoing document was sent via first class mail to all counsel of record:

William S. Consovoy
Jeffrey M. Harris
Cameron T. Norris
Samuel D. Adkisson
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Suite 700
Arlington, VA 22201
will@consovoymccarthy.com

*Counsel for Plaintiffs Tony K. McDonald, et al.*

Joshua S. Johnson
Morgan A. Kelley
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
joshjohnson@velaw.com
mkelley@velaw.com

Thomas S. Leatherbury
VINSON & ELKINS LLP
2001 Ross Avenue
Suite 3700
Dallas, TX 75201
tleatherbury@velaw.com

Patrick W. Mizell
Deborah C. Milner
VINSON & ELKINS LLP
1001 Fannin Street
Suite 2500
Houston, TX 77002
pmizell@velaw.com
cmilner@velaw.com

*Counsel for Defendants Joe K. Longley, et al.*

Cynthia A. Morales