**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| TONY K. MCDONALD, JOSHUA B. HAMMER, and MARK S. PULLIAM, <br><br>    Plaintiffs, <br><br>v. <br><br>JOE K. LONGLEY, et al., <br><br>    Defendants. | Civil Action No. 1:19-cv-00219-LY |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**
Joshua S. Johnson (admitted *pro hac vice*)
State Bar No. 24070002
Morgan A. Kelley (admitted *pro hac vice*)
State Bar No. 1617261
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Tel: (202) 639-6623
Fax: (202) 879-8934
joshjohnson@velaw.com
mkelley@velaw.com

Thomas S. Leatherbury
State Bar No. 12095275
VINSON & ELKINS LLP
2001 Ross Avenue
Suite 3700
Dallas, TX 75201
Tel: (214) 220-7792
Fax: (214) 999-7792
tleatherbury@velaw.com

Patrick W. Mizell
State Bar No. 14233980
Deborah C. Milner
State Bar No. 24065761
VINSON & ELKINS LLP
1001 Fannin Street
Suite 2500
Houston, TX 77002
Tel: (713) 758-2932
Fax: (713) 615-5912
pmizell@velaw.com
cmilner@velaw.com

*Counsel for Defendants*

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

I. Background ........................................................................................................................ 2

II. Argument ............................................................................................................................ 3

    A. Plaintiffs Have No Likelihood of Success on the Merits ......................................... 4

    B. Plaintiffs Have Not Demonstrated a Substantial Threat of Irreparable Injury ....... 8

    C. The Balance of Equities and Public Interest Favor Defendants ............................. 9

    D. Alternatively, the Court Should Require Payments Into Its Registry ................... 10

III. Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of People With Disabilities v. Herrera*,
  580 F. Supp. 2d 1195 (D.N.M. 2008) .................................................................... 10

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
  710 F.3d 579 (5th Cir. 2013) ................................................................................... 10

*Def. Distributed v. U.S. Dep't of State*,
  838 F.3d 451 (5th Cir. 2016) ..................................................................................... 3

*Elrod v. Burns*,
  427 U.S. 347 (1976) .................................................................................................. 9

*Gardner v. State Bar of Nev.*,
  284 F.3d 1040 (9th Cir. 2002) .................................................................................. 5

*Grutter v. Bollinger*,
  539 U.S. 306 (2003) .................................................................................................. 8

*Harris v. Quinn*,
  573 U.S. 616 (2014) .............................................................................................. 4, 6

*Hohe v. Casey*,
  868 F.2d 69 (3d Cir. 1989) ................................................................................... 9, 10

*Janus v. Am. Fed'n of State, County, & Mun. Emps.*,
  138 S. Ct. 2448 (2018) .......................................................................................... 4, 10

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) .................................................................................... 3

*Keller v. State Bar of California*,
  496 U.S. 1 (1990) ............................................................................................. passim

*Kingstad v. State Bar of Wis.*,
  622 F.3d 708 (7th Cir. 2010) .................................................................................... 5

*Lathrop v. Donohue*,
  367 U.S. 820 (1961) ......................................................................................... passim

*Lehnert v. Ferris Faculty Ass'n*,
  500 U.S. 507 (1991) .................................................................................................. 7

*Liberty Counsel v. Fla. Bar Bd. of Governors*,
  12 So. 3d 183 (Fla. 2009) .......................................................................................... 8

*Morrow v. State Bar of Cal.*,
  188 F.3d 1174 (9th Cir. 1999) .................................................................................. 5

*Nat'l Treasury Emps. Union v. United States*,
  927 F.2d 1253 (D.C. Cir. 1991) .............................................................................. 10

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989) .................................................................................................. 4

*Texans for Free Enter. v. Texas Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013) ................................................................................. 9

*United States v. Woods*,
  571 U.S. 31 (2013) .................................................................................................. 6

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................................... 1

**Statutes**

Tex. Gov't Code Ann. § 81.011(a) ............................................................................... 2

Tex. Gov't Code Ann. § 81.012 ............................................................................... 1, 2

Tex. Gov't Code Ann. § 81.019 .................................................................................... 3

Tex. Gov't Code Ann. § 81.020(b)(3) .......................................................................... 3

Tex. Gov't Code Ann. § 81.022(b)-(c) ......................................................................... 3

Tex. Gov't Code Ann. § 81.024(a) ............................................................................... 2

Tex. Gov't Code Ann. § 81.034 ............................................................................... 3, 5

Tex. Gov't Code Ann. § 81.051(b) ............................................................................... 2

Tex. Gov't Code Ann. § 81.054 ............................................................................... 1, 2

Tex. Gov't Code Ann. § 81.054(c) ............................................................................... 2

Tex. Gov't Code Ann. § 81.054(c)-(d) ...................................................................... 2, 6

Tex. Gov't Code Ann. § 81.054(d) .......................................................................... 3, 5

Tex. Gov't Code Ann. § 81.054(j) ................................................................................ 6

Tex. Gov't Code Ann. § 81.054(j)-(k) .......................................................................... 2

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................................... 10

Fed. R. Civ. P. 67 ....................................................................................................... 10

Local R. CV-67 .......................................................................................................... 10

State Bar R. art. IX ...................................................................................................... 7

State Bar R. art. XII, § 6 ............................................................................................. 7

Tex. Disciplinary R. Prof'l Conduct 6.01 cmt. 5 ......................................................... 6

Defendants are members of the State Bar of Texas Board of Directors sued only in their official capacities. Plaintiffs allege that the Texas State Bar Act's requirement that attorneys enroll in, and pay annual fees to, the State Bar violates their First Amendment rights to freedom of association and speech. Pls.' Mot. for Prelim. Inj. 1 (Mar. 25, 2019), ECF No. 5 ("Inj. Mot."); Compl. ¶¶ 1-4 (Mar. 6, 2019), ECF No. 1. Plaintiffs have moved for a preliminary injunction that would prohibit Defendants "from taking any action to investigate, threaten, or punish Plaintiffs" for "failing to associate with the Bar during the pendency of this action" and "failing to pay bar dues or the legal services fee" required by Tex. Gov't Code Ann. § 81.054.[1] Inj. Mot. 11.

This Court should deny Plaintiffs' motion because Plaintiffs have not met the requirements for the "extraordinary remedy" of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs cannot show that they are likely to succeed on the merits of their claims because those claims are foreclosed by *Lathrop v. Donohue*, 367 U.S. 820 (1961), and *Keller v. State Bar of California*, 496 U.S. 1 (1990). Under those decisions, the state may constitutionally require attorneys to join the Bar and fund Bar expenditures, as long as those expenditures are germane to the state's interests in regulating the legal profession or improving the quality of legal services in Texas. *See Keller*, 496 U.S. at 13-14. Plaintiffs also cannot establish a substantial and immediate threat of irreparable injury because they face no negative repercussions for failing to pay their 2019-2020 membership fees as long as those fees are paid by August 31, 2019. Finally, the balance of equities and public-interest considerations weigh against a preliminary injunction that would interfere with the Bar's collection of membership fees, which could jeopardize the Bar's ability to operate in furtherance of the important public purposes for which it exists. *See* Tex. Gov't Code Ann. § 81.012. If the Court nonetheless concludes that a

---

[1] Plaintiffs ignore that Defendants lack relevant enforcement authority. Mot. to Dismiss 3-4.

1

preliminary injunction is warranted, it should impose only the limited relief necessary to prevent the principal harm Plaintiffs allege—the compulsory funding of certain Bar activities—and should require payment of the challenged fees into the Court's registry pending this litigation's resolution.

## I. BACKGROUND

The Texas legislature established the State Bar of Texas as "a public corporation and an administrative agency of the judicial department of government." Tex. Gov't Code Ann. § 81.011(a); *see also id.* § 81.012 (listing Bar's purposes). The Bar is governed by the State Bar Act, rules promulgated by the Texas Supreme Court, *id.* § 81.024(a), and the State Bar Board of Directors Policy Manual, *see* Inj. Mot., Ex. EE ("Policy Manual").

Consistent with the approach taken by a majority of states, the State Bar of Texas is a "mandatory" or "integrated" bar. *See* Apffel Decl. ¶ 34. All attorneys practicing in Texas must become Bar members and pay annual membership fees, which account for almost half the Bar's annual revenue. Tex. Gov't Code Ann. §§ 81.051(b), 81.054; Ex. 2 at 7, 9.[2] The annual fees are currently $68 for active members licensed less than 3 years; $148 for active members licensed between 3 and 5 years; $235 for active members licensed for at least 5 years; and $50 for inactive members. Policy Manual § 3.01.01. Non-exempt lawyers must also pay a $65 annual legal services fee. Tex. Gov't Code Ann. § 81.054(c)-(d), (j)-(k). The Bar does not receive or control that fee. *Id.* § 81.054(c)-(d). Instead, the Texas Supreme Court distributes the legal services fees to the Comptroller, who allocates half to the Supreme Court Judicial Fund to fund civil legal services for the indigent, and the other half to the Fair Defense Account of the state's general revenue fund for indigent criminal defense programs. *Id.* § 81.054(c).

Texas law and State Bar policy require that all Bar expenditures further the state's interests

---

[2] "Ex." refers to exhibits attached to the declaration of Joshua S. Johnson.

in regulating the legal profession and improving legal-service quality. The State Bar Act provides that membership fees "may be used only for administering the public purposes" provided for in the Act, Tex. Gov't Code Ann. § 81.054(d), and prohibits the Bar from using any membership fees "for influencing the passage or defeat of any legislative measure unless the measure relates to the regulation of the legal profession, improving the quality of legal services, or the administration of justice," *id.* § 81.034. Board Policy Manual § 3.14.01 provides that Bar expenditures are "limited both as set forth at § 81.034 … and in *Keller v. State Bar of California*, 496 U.S. 1 (1990)."

All Bar members have the opportunity to object to expenditures they believe violate *Keller*. For example, members can present objections to the Board, Board committees, or sections before the proposed activity is approved or at the annual public hearing on the Bar's budget; they can vote for their preferred officers and directors; and they can run for leadership positions themselves. *See, e.g.*, Tex. Gov't Code Ann. §§ 81.019, 81.020(b)(3), 81.022(b)-(c); Policy Manual §§ 8.01.03(B), 8.01.06(B), 8.01.08(B), 8.01.09(D). Members may also file a written objection to any actual or proposed Bar expenditure and seek a *pro rata* refund of their membership fees, plus interest. Policy Manual § 3.14. The Bar has no record of any person—including Plaintiffs— invoking the protest procedure from its 2005 adoption to this action's filing. Apffel Decl. ¶ 81.

## II.  ARGUMENT

To obtain a preliminary injunction, Plaintiffs bear the burden of establishing:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). This Court cannot grant Plaintiffs' motion if they fail to establish *any* of those elements. *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016). Plaintiffs' showing on all elements is insufficient.

### A. Plaintiffs Have No Likelihood of Success on the Merits

1. Plaintiffs' first claim is that "compelling them to join, associate with, and financially support the State Bar violates the First and Fourteenth Amendments." Compl. ¶ 70; *see also* Inj. Mot. 5. The Supreme Court's decisions in *Lathrop* and *Keller* foreclose that claim. In *Lathrop*, the plaintiff claimed that requiring him to join and financially support the Wisconsin bar, which engaged in legislative activities, violated his First Amendment rights of freedom of association and speech. *Lathrop*, 367 U.S. at 821-23 (plurality op.). The Court held that integrated bars do not violate an attorney's First Amendment right to freedom of association because they "further the State's legitimate interests in raising the quality of professional services." *Id.* at 843 (plurality op.); *accord id.* at 849-50 (Harlan, J., and Frankfurter, J., concurring); *id.* at 865 (Whittaker, J., concurring in result). The four-Justice plurality declined to decide whether the integrated bar violated attorneys' free-speech rights. *Id.* at 844-48. Addressing that question in *Keller*, the Court unanimously held that lawyers "may be required to join and pay dues to" an integrated bar, as long as bar expenditures funded from mandatory fees "are necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of the legal service available to the people of the State."[3] *Keller*, 496 U.S. at 4, 13-14 (citation omitted).

Despite *Lathrop* and *Keller*, Plaintiffs claim that the First Amendment precludes the Texas legislature's decision to require attorneys to enroll in and pay fees to the Bar because it engages in certain activities that Plaintiffs view as "political or ideological." Inj. Mot. 5. But as *Keller* makes clear, the question is *not* whether a challenged activity is "political or ideological" in the abstract,

---

[3] Far from overruling *Keller* in *Janus v. Am. Fed'n of State, County, & Mun. Emps.*, 138 S. Ct. 2448 (2018), the Supreme Court has stated—in a decision by *Janus*'s author, Justice Alito—that *Keller* "fits comfortably within" and is "wholly consistent with" the exacting-scrutiny framework applied in *Janus*. *Harris v. Quinn*, 573 U.S. 616, 655-56 (2014). *Keller* binds this Court. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

4

but instead is whether the activity is "germane to" the state interests justifying integrated bars' establishment—regulating the legal profession and improving legal-service quality. *Keller*, 496 U.S. at 13-14. *Keller* only prohibits state bars from using mandatory fees to "fund activities of an ideological nature *which fall outside of those areas*." *Id.* at 14 (emphasis added). Thus, even if a Bar expenditure has some political or ideological features, it is constitutional as long as it is germane to a permissible *Keller* purpose.[4] *See, e.g.*, *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 718 (7th Cir. 2010); *Gardner v. State Bar of Nev.*, 284 F.3d 1040, 1043 (9th Cir. 2002).

The State Bar Act and the Bar's Policy Manual limit the Bar's expenditures to the objectives authorized in *Keller*, and the Bar complies with those limitations. *See, e.g.*, Tex. Gov't Code Ann. §§ 81.034, 81.054(d); Policy Manual § 3.14.01. Even if Plaintiffs identified a few instances where the Bar transgressed *Keller*'s limitations (they did not), *Lathrop* makes clear that those improper expenditures would not render Texas's integrated-bar framework *as a whole* unconstitutional.[5] Plaintiffs' first claim is thus foreclosed by binding precedent.

2. Plaintiffs' second claim is that the State Bar violates the First Amendment by using mandatory fees to fund activities allegedly "beyond its regulatory and disciplinary functions." Inj.

---

[4] Because the lower court in *Keller* applied the wrong standard, the Supreme Court remanded for further proceedings. In doing so, the Court recognized that "[i]n addition to their claim for relief based on [the California State Bar's] use of their mandatory dues," the plaintiffs also appeared to assert a "broader freedom of association claim." 496 U.S. at 17. Accordingly, the Court noted that the lower courts "remain[ed] free … to consider" whether the plaintiffs could "be compelled to associate with an organization that engages in political or ideological activities *beyond those for which mandatory financial support is justified under the principles of Lathrop and Abood*." *Id.* (emphasis added). That language makes clear that the freedom-of-association claim *Keller* "declined to address" (Inj. Mot. 5-6) was limited to state bar political or ideological activities unrelated to the state's legitimate interests in professional regulation or legal-service quality.

[5] *See Lathrop*, 367 U.S. at 843 (plurality op.) (rejecting freedom-of-association claim because "the bulk" of bar activities furthered permissible purposes, despite reserving judgment on whether particular expenditures violated free-speech rights); *see also Morrow v. State Bar of Cal.*, 188 F.3d 1174, 1177 (9th Cir. 1999) (*Lathrop* foreclosed claim against compelled association with integrated bar that engaged in political activities).

5

Mot. 7; Compl. ¶ 52. The "guiding standard" under *Keller*, however, is whether the challenged expenditure is "for the purpose of regulating the legal profession *or* improving the quality of … legal service[s]." 496 U.S. at 14 (emphasis added) (citation omitted). *Keller*'s use of the disjunctive means that a state bar expenditure complies with the First Amendment if it was "necessarily or reasonably incurred" to advance the objective of *either* professional regulation *or* improving legal-service quality. *Id.*; *see also United States v. Woods*, 571 U.S. 31, 45-46 (2013). Plaintiffs incorrectly suggest that *Harris* limits state bars to using mandatory fees "only to fund activities 'connected with proposing ethical codes and disciplining bar members.'" Inj. Mot. 7 (quoting *Harris*, 573 U.S. at 655). *Harris* reaffirmed both prongs of the *Keller* standard. It noted *Keller*'s holding that mandatory bar fees are justified by the "State's interest in regulating the legal profession *and improving the quality of legal services*." 573 U.S. at 655 (emphasis added) (quoting *Keller*, 496 U.S. at 14). *Harris* then confirmed that *Keller* is "wholly consistent" with the Court's decision in *Harris*. *Id.* at 656. Each Bar expenditure Plaintiffs challenge complies with *Keller*.

*Access to Justice.* Plaintiffs do not contest that the Bar's support of legal-aid organizations, *pro bono* efforts, and the Texas Access to Justice Commission furthers the state's legitimate interest under *Keller* in improving the quality and accessibility of legal services for low-income individuals. *See generally* McAllister Decl. The Bar's access-to-justice initiatives also further the state's interest in professional regulation because they assist lawyers with fulfilling their "ethical responsibility to provide public interest legal service." Tex. Disciplinary R. Prof'l Conduct 6.01 cmt. 5; *accord id.*, preamble ¶¶ 5-6. Plaintiffs complain about the $65 legal services fee imposed under Tex. Gov't Code Ann. § 81.054(j), *see* Inj. Mot. 3, 8, but the fee is not subject to *Keller* because it is not used to fund any Bar expenditures, *see* Tex. Gov't Code Ann. § 81.054(c)-(d). But even if *Keller* applied, the fee would satisfy *Keller* because—like the Bar's access-to-justice

6

programs—promoting indigent legal services is "germane to" the state's interests in regulating the legal profession and improving legal-service quality. 496 U.S. at 13-14.

*Continuing Legal Education, Annual Meeting, and Bar Journal.* Plaintiffs challenge the Bar's sponsorship of continuing legal education ("CLE") programs with purportedly "ideologically-charged" titles, including at its Annual Meeting. Inj. Mot. 7-8. Far from harming Plaintiffs, the Bar's CLE programs generate significant non-membership-fee revenue, helping keep membership fees low. *See* Ex. 2 at 9; Apffel Decl. ¶ 54. Offering programs to assist Bar members with satisfying their minimum CLE requirement, *see* Ex. 6, State Bar R. art. XII, § 6, and keeping up-to-date with developments in the law and legal profession furthers the state's interests in regulating the legal profession and improving legal-service quality. *See Lathrop*, 367 U.S. at 843 (plurality op.) ("elevating … educational and ethical standards" is "legitimate end"). The same is true of the *Texas Bar Journal* (Inj. Mot. 4, 8), which also informs Bar members of developments in the law and legal profession. *See* State Bar R. art. IX; Policy Manual § 7.05; *cf. Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 529 (1991) (rejecting First Amendment challenge to expenditures on union's statewide journal).

*Governmental Relations.* Plaintiffs assert that "lobbying is the paradigmatic example of what mandatory bar associations *cannot* do." Inj. Mot. 7. *Keller*, however, only precludes using mandatory bar fees for lobbying activities that do *not* further the state's legitimate interests in professional regulation or improving legal-service quality—e.g., endorsing "gun control or nuclear weapons freeze initiative[s]." 496 U.S. at 15-16. *Keller* authorizes lobbying that advances those legitimate state interests, such as lobbying for "propos[ed] ethical codes." *Id.* All Bar legislative activities, including its support for each legislative proposal Plaintiffs cite (Inj. Mot. 7), are subject to a detailed, multi-step deliberative process to ensure the activities comply with the State Bar Act

7

and *Keller*. Policy Manual Part VIII; *see also* Laney Decl. ¶¶ 15-21. Moreover, Plaintiffs cannot establish any ongoing First Amendment harm with respect to the legislative proposals they cite because members of the Bar's voluntary subject-matter sections are coordinating lobbying for those proposals, without compensation from the Bar. *See* Laney Decl. ¶¶ 28-30; *see also Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 188 (Fla. 2009) (voluntary bar section's *amicus* brief did not violate *Keller*).

***Diversity Initiatives.*** The Bar diversity-related initiatives challenged by Plaintiffs (Inj. Mot. 2-3, 7) seek to reduce the barriers imposed by Texas's long and well-known history of discrimination in the legal profession and legal education. Those initiatives further the state's interests in regulating the legal profession and improving legal-service quality because they promote "a fair and equal legal profession for minority, women, and LGBT attorneys," Inj. Mot., Ex. F, and help lawyers and courts bring a wide range of viewpoints and experiences to bear on the legal problems faced by Texas's diverse population. *See* Henning Decl.; Krasney Decl.; *cf. Grutter v. Bollinger*, 539 U.S. 306, 330 (2003).

3. Plaintiffs also have no likelihood of succeeding on their third claim that the protest policy set forth in Policy Manual § 3.14 violates the First Amendment. *See* Inj. Mot. 8-10. Like their other claims, Plaintiffs' challenge to the protest policy is predicated on the contention that the Bar has "non-chargeable" expenditures (*id.* at 8)—i.e., expenditures that were not "necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of … legal service[s]," *Keller*, 496 U.S. at 14 (citation omitted). But as explained above, the Bar's robust procedures ensure that *all* its expenditures comply with *Keller*. *See supra* pp. 5-8.

**B.     Plaintiffs Have Not Demonstrated a Substantial Threat of Irreparable Injury**

Regardless of the merits of Plaintiffs' claims, they must also demonstrate "a substantial threat of irreparable injury outweighing the harms of granting the preliminary injunction." *Texans*

8

*for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Plaintiffs cannot show a substantial threat of irreparable injury warranting injunctive relief at this time. As in *Lathrop*, Plaintiffs' "compulsory enrollment [in the Bar] imposes only the duty to pay fees." 367 U.S. at 827-28 (plurality op.). Plaintiffs face no immediate threat of irreparable injury because they can wait until August 31, 2019, to pay their 2019-2020 Bar fees without incurring any negative consequences. Apffel Decl. ¶ 29; *accord* Inj. Mot. 10. This Court may be able to resolve Plaintiffs' claims on their merits before August 31 by deciding the parties' pending dispositive cross-motions—obviating any need for a preliminary injunction.[6]

### C. The Balance of Equities and Public Interest Favor Defendants

A preliminary injunction would seriously harm the Bar and disserve the public interest. The Bar derives almost half its revenue from membership fees. *See* Compl. ¶ 30; Ex. 2 at 7, 9. If granted, an injunction excusing Plaintiffs from paying their fees could encourage other attorneys to seek similar relief. Defending against multiple related lawsuits would direct resources away from other Bar activities that protect the public and ensure that Texas lawyers provide competent and ethical legal representation. *See supra* pp. 5-8. And any material disruption of the Bar's collection of membership fees would severely jeopardize the Bar's ability to satisfy its financial obligations, including payroll and rent. *See* Ex. 2 at 44, 66.

Plaintiffs' own delay in bringing this case "considerably undercuts their allegation of irreparable harm," and further tilts the balance of the equities in Defendants' favor. *Am. Ass'n of*

---

[6] *See Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (mere "*assertion* of First Amendment rights does not automatically require a finding of irreparable injury" (emphasis added)); *cf. Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (plurality op.) (affirming preliminary injunction where respondents demonstrated likely merits success *and* "First Amendment interests were either threatened or in fact being impaired *at the time relief was sought*" (emphasis added)); *Texans for Free Enter.*, 732 F.3d at 539 (irreparable injury where statutes were *present* barrier to "rais[ing] money to pay for speech").

9

*People With Disabilities v. Herrera*, 580 F. Supp. 2d 1195, 1246 (D.N.M. 2008). Although Plaintiffs' claims are principally founded on *Janus*, which was decided on June 27, 2018, Plaintiffs did not file their complaint until over eight months after that decision. *See* Compl. ¶ 2; Inj. Mot. 1. Moreover, Plaintiffs have paid their membership fees for years without objecting to a Bar expenditure until this lawsuit. Apffel Decl. ¶¶ 86-87. Plaintiffs' late-breaking allegations of abstract First Amendment injuries cannot outweigh the concrete harms to the Bar and the public from interfering with the Bar's principal revenue source.

### D. Alternatively, the Court Should Require Payments Into Its Registry

If the Court concludes that a preliminary injunction is warranted, it "must narrowly tailor [the] injunction to remedy the specific action which gives rise to the order." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (citation omitted). It must also order Plaintiffs to provide security "to pay the [Bar's] costs and damages" if Plaintiffs ultimately lose on the merits. Fed. R. Civ. P. 65(c). Here, the Court could satisfy both requirements by requiring Plaintiffs to pay the challenged Bar fees into the Court's registry pending this litigation's resolution. *See* Fed. R. Civ. P. 67; Local R. CV-67. That approach would ensure that Plaintiffs' payments do not subsidize activities to which they object while this action is pending. *See Hohe*, 868 F.2d at 71-73 (escrow obviated alleged irreparable injury); *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1256 (D.C. Cir. 1991) (Thomas, J.) (similar). It would also protect the Bar by ensuring that it could collect Plaintiffs' fees if their First Amendment claims fail.

### III. CONCLUSION

The Court should deny Plaintiffs' preliminary-injunction motion. Alternatively, it should require Plaintiffs to pay their Bar fees into the Court's registry pending this litigation's resolution.

Dated: May 13, 2019

Respectfully submitted,

*/s/ Thomas S. Leatherbury*

Joshua S. Johnson (admitted *pro hac vice*)
State Bar No. 24070002
Morgan A. Kelley (admitted *pro hac vice*)
State Bar No. 1617261
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Tel: (202) 639-6623
Fax: (202) 879-8934
joshjohnson@velaw.com
mkelley@velaw.com

Thomas S. Leatherbury
State Bar No. 12095275
VINSON & ELKINS LLP
2001 Ross Avenue
Suite 3700
Dallas, TX 75201
Tel: (214) 220-7792
Fax: (214) 999-7792
tleatherbury@velaw.com

Patrick W. Mizell
State Bar No. 14233980
Deborah C. Milner
State Bar No. 24065761
VINSON & ELKINS LLP
1001 Fannin Street
Suite 2500
Houston, TX 77002
Tel: (713) 758-2932
Fax: (713) 615-5912
pmizell@velaw.com
cmilner@velaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2019, I electronically filed the foregoing Opposition to Plaintiffs' Motion for Preliminary Injunction with the Clerk of the Court for the U.S. District Court for the Western District of Texas by using the Court's CM/ECF system, which will send notification of such filing to the following:

William S. Consovoy
Jeffrey M. Harris
Cameron T. Norris
Samuel D. Adkisson
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (703) 243-9423
Fax: (703) 243-9423
will@consovoymccarthy.com

*Counsel for Plaintiffs Tony K. McDonald, Joshua B. Hammer, and Mark S. Pulliam*

Dated: May 13, 2019        */s/ Thomas S. Leatherbury*
                           Thomas S. Leatherbury
                           *Counsel for Defendants*