# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TONY K. MCDONALD, JOSHUA B. HAMMER, and MARK S. PULLIAM,<br><br>              Plaintiffs,<br><br>vs.<br><br>JOE K. LONGLEY, et al.,<br><br>              Defendants, | No. 1:19-cv-219-LY |

## BRIEF *AMICUS CURIAE* OF GOLDWATER INSTITUTE IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

 

Matthew R. Miller (TX Bar # 24046444)
**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Amicus Goldwater Institute*

April 25, 2019

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION AND INTEREST OF *AMICUS* ..................................................1

SUMMARY OF ARGUMENT .....................................................................................1

ARGUMENT .................................................................................................................2

I. Under the applicable exacting scrutiny, mandatory membership violates the Plaintiffs' freedom of association. ...........................................................................................……….2

II. The nature of the non-regulatory activities the Texas Bar engages in is irrelevant for purposes of the freedom of association claim. ………………………………………….................5

CONCLUSION ..............................................................................................................8

CERTIFICATE OF SERVICE ...................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) .................................................................. 6

*Crowe v. Oregon State Bar*, No. 3:18-cv-02139-JR (D. Or., filed Dec. 13, 2018) ........................ 1

*Fleck v. Wetch*, No. 16-1564 (8th Cir., pending) ............................................................ 1

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) ............................................................. 3

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) ................................................................... 5

*In re Pet. for a Rule Change to Create a Voluntary State Bar of Neb.*, 841 N.W.2d 167 (Neb. 2013) ........................................................................................................ 4

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ............................................................ 2, 3, 4

*Keller v. State Bar of California*, 496 U.S. 1 (1990) ....................................................... 2

*Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010) ............................................... 4

*Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483 (5th Cir. 1995) ....... 7

*Nixon v. Adm'r of Gen. Servs.*, 408 F. Supp. 321 (D.D.C. 1976), *aff'd*, 433 U.S. 425 (1977) ... 2, 3

*Roberts v. U.S. Jaycees,* 468 U.S. 609 (1984) ............................................................... 7

*Schell v. Williams,* No. CIV-19-281-C (W.D. Okla., filed Mar. 26, 2019) ................................... 1

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000) .......................................... 4

**Other Authorities**

Brian Langille, *The Freedom of Association Mess: How We Got Into It and How We Can Get Out of It*, 54 McGill L.J. 177 (2009) ........................................................................ 8

Lyle Moran, *California Split: 1 Year After Nation's Largest Bar Became 2 Entities, Observers See Positive Change,* ABA Journal, Feb. 2019 ............................................................. 4

Patrick Lofton, *Any Club That Would Have Me As A Member: The Historical Basis for A Non-Expressive and Non-Intimate Freedom of Association*, 81 Miss. L.J. 327 (2011) ............... 6, 7

Ralph H. Brock, *"An Aliquot Portion of Their Dues:" A Survey of Unified Bar Compliance with Hudson and Keller,* 1 Tex. Tech J. Tex. Admin. L. 23 (2000) .......................................... 4

*State Bar of Texas Board of Directors Policy Manual* (June 1, 2018) ............................................ 8

Thomas I. Emerson, *Freedom of Association and Freedom of Expression*, 74 Yale L.J. 1 (1964) 6

Timothy Sandefur, *The Permission Society* (2016) ......................................................... 8

**INTRODUCTION AND INTEREST OF *AMICUS***

The Goldwater Institute was established in 1988 as a nonpartisan public policy and research foundation dedicated to advancing the principles of limited government, economic freedom, and individual responsibility through litigation, research, policy briefings and advocacy. Through its Scharf–Norton Center for Constitutional Litigation, the Institute litigates cases and files *amicus* briefs when its or its clients' objectives are directly implicated.

Among the Institute's principal goals is defending the right of freedom of association and freedom of speech against compulsory membership in state bar associations. Toward that goal, the Goldwater Institute is currently representing the plaintiffs in *Fleck v. Wetch*, No. 16-1564 (8th Cir., pending), *Crowe v. Oregon State Bar*, No. 3:18-cv-02139-JR (D. Or., filed Dec. 13, 2018), and *Schell v. Williams,* No. CIV-19-281-C (W.D. Okla., filed Mar. 26, 2019). The Institute has also filed a comment in Opinion Request 48487, currently pending before the Opinion Committee of the Attorney General's office, involving the constitutionality of Texas' mandatory bar association membership, and has filed a petition asking the Arizona State Bar to abolish its bar association membership requirement, as well. The Goldwater Institute believes its policy experience and legal expertise will assist this Court in its decision of the Plaintiffs' motion for preliminary injunction.

**SUMMARY OF ARGUMENT**

Mandatory bar association membership violates the First Amendment right of freedom of association. The Plaintiffs observe that compulsory membership intrudes on this right "even if the bar merely *regulates* attorneys." Pls.' Mot. for Prelim. Inj. (Docket No. 5) at 6. This is correct. Even aside from the Texas Bar's political and ideological activities, the First Amendment requires the state to prove that there is no "significantly less restrictive" way for it to

1

attain its compelling state interest in regulating the practice of law. *Janus v. AFSCME*, 138 S. Ct. 2448, 2466 (2018). And because it is possible for the state to regulate the practice of law in a less restrictive way—i.e., simply by enacting and enforcing minimum standards for practice, the same as it does for other trades and professions—and because many other states do, in fact, already regulate the practice of law without mandating membership in a bar association, the compulsory membership rule at issue here violates the Constitution, *regardless* of the Texas Bar's political activism.

There is no need, therefore, for this Court to address the question of whether and to what degree the Bar engages in political activities, let alone to evaluate the merits of those activities. The freedom of association question at issue here is simple and straightforward. The state bears the burden of proving that it cannot regulate the practice of law in a way significantly less restrictive of the Plaintiffs' associational freedoms than compulsory membership in the Bar. *See Nixon v. Adm'r of Gen. Servs.*, 408 F. Supp. 321, 368 (D.D.C. 1976), *aff'd*, 433 U.S. 425 (1977)). Because it cannot make that showing, compulsory membership is unconstitutional, and this Court should grant the injunction sought.

## ARGUMENT

**I.        Under the applicable exacting scrutiny, mandatory membership violates the Plaintiffs' freedom of association.**

The proper level of scrutiny here is "exacting scrutiny." *Janus*, 138 S. Ct. at 2465. *Keller v. State Bar of California*, 496 U.S. 1 (1990)—which, as Plaintiffs correctly observe, did not directly address the question of whether mandatory membership in a state bar is constitutional, but simply assumed that for purposes of the decision—applied a mere "reasonableness" standard. *Id.* at 8. But *Janus* abrogated that by calling such a low standard "inappropriate," 138 S. Ct. at 2480, and "foreign to our free-speech jurisprudence." *Id.* at 2465.

2

*Janus* made clear that the proper form of scrutiny is the same "exacting scrutiny" that applies to all other infringements on associational rights, under which a restriction on freedom of association "must 'serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Id.*

The only compelling government interest compulsory bar association membership might serve is the "protect[ion] [of] the public health, safety, and other valid interests" by "establish[ing] standards for licensing … and regulating the practice of [attorneys]." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). Therefore, the question under exacting scrutiny is whether that purpose can be achieved through means significantly less restrictive of the Plaintiffs' associational freedoms. The state—not the Plaintiffs—bears that burden. *Nixon,* 408 F. Supp. at 368 ("Where an infringement of associational freedom can be shown, the government bears the burden of showing that the action it defends serves a compelling government interest that cannot be promoted in a less restrictive way.").

It is obvious, however, that the state *can* achieve its compelling interest in a less restrictive way. Establishing licensing standards and regulating the practice of law do not require mandatory membership in an association any more than establishing standards for, and regulating the practice of medicine requires membership in the Texas Medical Association—or regulating the practice of plumbing and setting minimum standards for the practice of that trade requires membership in the Associated Plumbing-Heating-Cooling Contractors of Texas. The state can regulate the practice of law by setting and enforcing minimum standards, administering a bar exam, and requiring attorneys to satisfy continuing legal education requirements. That is sufficient to serve the state's compelling interests.

3

Many other states already do this. In fact, 20 states now have voluntary bar associations, including some of the nation's smallest bars, such as Vermont, and some of the largest, such as Massachusetts and New York. Ralph H. Brock, *"An Aliquot Portion of Their Dues:" A Survey of Unified Bar Compliance with Hudson and Keller,* 1 Tex. Tech J. Tex. Admin. L. 23, 24 n.1 (2000).[1] Even with voluntary bar associations, these states are able to regulate the practice of law to protect consumers, and the voluntary associations still offer law-related public education programs, lawyer referral, continuing legal education, ethical advice, and other such services without compulsory membership and subsidization.

Even if that were not true, there is no reason to doubt that voluntary entities *could* provide these services in the future, and this Court's "less restrictive means" inquiry must include consideration of alternatives other than state coercion. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 821–22 (2000). But the fact that more than a third of the states already regulate the practice of law without compulsory membership in an association, and still enjoy services for attorneys and clients that go beyond the regulation of law, is definitive proof that the state could achieve its compelling interest here in a manner significantly less restrictive of the Plaintiffs' associational freedoms.

*Janus* makes clear how this Court's analysis should proceed. In that case, the state sought to justify its mandatory fee rule on the theory that the union needed mandatory fees in order to

---

[1] After this article was published, Nebraska separated its bar into a mandatory regulatory side and a voluntary non-regulatory side, noting that the mandatory membership requirement "'implicate[s] the First Amendment freedom of association, which includes the freedom to choose not to associate.'" *In re Pet. for a Rule Change to Create a Voluntary State Bar of Neb.*, 841 N.W.2d 167, 173 (Neb. 2013) (quoting *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 712-13 (7th Cir. 2010)). California did likewise as of this year. Lyle Moran, *California Split: 1 Year After Nation's Largest Bar Became 2 Entities, Observers See Positive Change,* ABA Journal, Feb. 2019, http://www.abajournal.com/magazine/article/1-year-after-californias-state-bar-became-2-entities-observers-see-positive-changes/.

operate as the exclusive bargaining representative for state employees. Absent the mandatory fees rule, the state argued, multiple unions would seek to represent employees, which would cause conflict and "pandemonium." 138 S. Ct. at 2465. But the Court observed that 28 states already had laws that prohibited such fees, and there was no pandemonium there. *Id.* at 2466. And millions of federal employees were not required to pay such fees, yet there was no evidence that this had undermined the government's interest in "labor peace." *Id.* It was therefore "undeniable that 'labor peace' can readily be achieved 'through means significantly less restrictive of associational freedom' than the assessment of agency fees," *id*. (quoting *Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014)), and that the state's arguments to the contrary were "simply not true." *Id.* at 2465.

The same analysis applies here: the fact that several states manage to do without mandatory bar association membership, but still regulate the practice of law for the protection of consumers, is evidence that the state's compelling interests can be achieved in a manner that satisfies the First Amendment. The Plaintiffs should prevail on their freedom of association claim.

II.     **The nature of the non-regulatory activities the Texas Bar engages in is irrelevant for purposes of the freedom of association claim.**

The Plaintiffs object to a number of specific non-regulatory activities that the Bar Association engages in, which they consider to be political or ideological—in nature. But their freedom of association claim does not hinge on the legitimacy (or lack thereof) of these activities. It is also irrelevant whether or not the Association's political or ideological positions will be ascribed to any individual Plaintiff.

The Supreme Court has made clear that that *even where* a state's restriction on freedom of association is "unrelated to the suppression of ideas," the state *still* may not impose that

5

restriction if there are "means significantly less restrictive of associational freedoms" available to achieve the state's compelling interest. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 641 (2000). Nor may it compel association even for extremely important reasons, if some significantly less restrictive alternative is available. That means the Court's focus should be on whether or not the state can achieve its goals in a substantially less restrictive way. Here, the answer is yes.

Some have argued that the restriction on attorneys' freedom of association rights is minimal in the bar association context, because lawyers are only required to sign a form and fund the association, and remain free to voice their disagreement with their bar association's political or ideological positions. That argument is fallacious, however. The violation of the freedom of association *simply is* the requirement to join the association. Even if the Plaintiffs are not required to attend its meetings, or to openly endorse it, or to participate in activities, they are nonetheless forced to *join* it and to be counted as members, which is *the* essential violation of freedom of association, as distinguished from free speech.

Although freedom of association is often grouped with freedom of speech, the two differ in important respects. The former includes an element of personal privacy not typically associated with the latter. *See further* Patrick Lofton, *Any Club That Would Have Me As A Member: The Historical Basis for A Non-Expressive and Non-Intimate Freedom of Association*, 81 Miss. L.J. 327, 357 (2011) ("[T]here is a historical basis, deeply rooted in the American tradition of civil liberty, for a non-expressive and non-intimate associational right based on privacy."). Freedom of association, over and above freedom of speech, is "a method of making more effective, of giving greater depth and scope to, the individual's needs, aspirations and liberties," and this is true even where associational rights are accompanied by no expressive purpose. Thomas I. Emerson, *Freedom of Association and Freedom of Expression*, 74 Yale L.J.

6

1, 4 (1964). This is made clear by the very fact that associations "acquire unique qualities, [and] have effects which can originate only with an association rather than an individual." *Id.* In other words, associations are entities in themselves, and membership in such an entity is an act in itself—an act offensive to the Plaintiffs—even aside from any expressive activity the entity might engage in. Consequently, people who simply wish to have nothing to do with the activities *or identity* of an association have that right. Freedom of association is therefore best understood as "associational autonomy," a right that is "neither expressive nor intimate, but one largely of privacy." Lofton, *supra* at 338, 342.

The Fifth Circuit recognized that associational freedom is a right distinct from speech in *Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483 (5th Cir. 1995), which invalidated a New Orleans anti-discrimination ordinance for private associations. The ordinance included an exception for "distinctly private entities," only if they submitted an application to the city, which would then hold a public hearing on whether to grant an exemption. *Id.* at 1487. The court found that this procedure failed the applicable strict scrutiny, *id.* at 1498, and emphasized the *privacy* interest at the heart of freedom of association: "if [the] clubs must go public, in order to remain private"—by applying for an exemption—"then their privacy rights ring hollow indeed." *Id.* at 1500. In other words, the freedom of association was not confined within the limits of freedom of expression doctrine—it was, rather, a question of personal autonomy and privacy, and of the individual's "'ability independently to define one's identity that is central to any concept of liberty.'" *Id.* at 1500 n.34 (quoting *Roberts v. U.S. Jaycees,* 468 U.S. 609, 619 (1984)).

This means that, even aside from a person's expressive interests, the Bar's membership mandate intrudes on a distinctive individual right: the right to choose whether or not to be a

7

member of any particular group. Freedom of association is best understood as "the freedom to do in combination with others what one is free to do alone," Brian Langille, *The Freedom of Association Mess: How We Got Into It and How We Can Get Out of It*, 54 McGill L.J. 177, 183 (2009)—or, in this case, the freedom to refrain from that. *See* Timothy Sandefur, *The Permission Society* 63-68 (2016).

Texas's membership mandate plainly violates that principle. The Texas Bar bills itself as the official, state-designated trade association representing the entire legal profession in the state. Its policy manual says that the Bar "was created not to participate in the general government of the State, but to provide specialized professional advice to those with the ultimate responsibility of governing the legal profession and to advance the role of the legal profession in serving the public. Its members and officers are such not because they are citizens or voters, but *because they are lawyers*." *State Bar of Texas Board of Directors Policy Manual* at 1 (June 1, 2018) (emphasis added).[2] Thus a person's identity as a lawyer is qualitatively aligned with that person's membership in the Texas State Bar. Even if individual attorneys remain free to express their personal disagreements with the Bar's political or ideological positions, they are still required to become a member of the club. And that intrudes on the Plaintiffs' privacy-related right to personal autonomy and self-definition, regardless of what expressive, political, ideological activities the Bar may engage in.

## CONCLUSION

Even aside from whether activities the Bar spends Plaintiffs' dues on are offensive, the fact that they are required to be members of the Bar is itself a distinct constitutional injury. That

---

[2] https://www.texasbar.com/AM/Template.cfm?Section=Governing_Documents1&Template=/CM/ContentDisplay.cfm&ContentID=41748

injury can only pass muster if the state can prove that its intrusion on this right achieves a compelling state interest in a way that cannot be achieved in some significantly less intrusive way. Since the state cannot prove that, the mandatory membership requirement must fail.

The motion for preliminary injunction should be *granted*.

**RESPECTFULLY SUBMITTED** this 25th day of April 2019 by:

/s/ Matthew R. Miller
Matthew R. Miller
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**

*Attorneys for Amicus Goldwater Institute*

**CERTIFICATE OF SERVICE**

Document Electronically Filed and Served by ECF this 25th day of April 2019 to:

William S. Consovoy
Jeffrey M. Harris
Cameron T. Norris
Samuel D. Adkisson
CONSOVOY McCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
cam@consovoymccarthy.com
*Counsel for Plaintiffs*

Thomas S. Leatherbury
VINSON & ELKINS
Trammell Crow Center
2001 Ross Ave., Ste. 3900
Dallas, TX 75201
tleatherbury@velaw.com
*Counsel for Defendants*

/s/ Matthew R. Miller
Matthew R. Miller