IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Tony K. McDonald, Joshua B.
Hammer, and Mark S. Pulliam,

     *Plaintiffs*,

v.                   No. 1:19-cv-219-LY

Joe K. Longley, *et al.*,

     *Defendants*.

## Brief *Amici Curiae*
### of Former Presidents of the State Bar of Texas,
### Former Chairs of the Texas Bar College, and
### Former Chairs of the State Bar of Texas Council of Chairs

Charles "Chad" Baruch
Texas Bar No. 01864300
chad@jtlaw.com
Randy Johnston
Texas Bar No. 10834400
Johnston Tobey Baruch, P.C.
Post Office Box 215
Addison, Texas 75001-0215
Telephone: (214) 741-6260
Facsimile: (214) 741-6248

*Counsel for Amici Curiae*

# Table of Contents

Table of Contents ............................................................. i

Index of Authorities ........................................................ ii

Interest and Identity of *Amici Curiae* ................................. 1

Introduction ................................................................... 2

Summary of the Argument ................................................ 2

Argument ...................................................................... 3

   1. The State Bar conducts numerous activities—including those under challenge—as part of its permissible mission to regulate attorneys and improve the quality of legal services in Texas............................. 4

     A. The State Bar provides CLE on issues that may confront Texas lawyers—including divisive issues......................................... 4

     B. The *Texas Bar Journal* serves as an important conduit of information to Texas lawyers.................................................. 7

     C. The State Bar provides attorney and client assistance programs....... 8

     D. The State Bar's diversity initiatives promote ethical compliance and improve the quality of legal services ...................................... 9

     E. The State Bar's access-to-justice initiatives promote ethical compliance and improve both the quality of legal services and the administration of justice in Texas ......................................... 13

     F. The State Bar's non-partisan legislative program improves the quality of legal services in Texas......................................... 14

     G. The State Bar's sections and the Texas Bar College offer numerous programs designed to promote ethical compliance and improve the quality of legal services................................................... 16

   2. Dismantling the State Bar would risk the destruction of all these activities—and diminish the quality of legal services in Texas................ 17

Conclusion..................................................................... 19

Certificate of Service....................................................................................21

# Index of Authorities

**Cases:**

*Cohen v. Hurley,*
  366 U.S. 117 (1961) ................................................................ 2

*Harris v. Quinn,*
  573 U.S. 616 (2014) ............................................................. 3, 4

*In the Matter of K.L.J.,*
  813 P.2d 276 (Alaska 1991) .................................................. 14

*Janus v. AFSCME, Council 31,*
  1238 S. Ct. 2448 (2018) .......................................................... 3

*Keller v. California,*
  496 U.S. 1 (1990) ................................................................ 3, 4

**Statutes, Rules, and Regulations:**

Tex. Disciplinary Rules Prof'l Conduct Preamble ¶ 3, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019 ............................................. 4

Tex. Disciplinary Rules Prof'l Conduct Preamble ¶ 5, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019 ......................................... 13

Tex. Disciplinary Rules Prof'l Conduct R. 1.01, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019 ....................................... 4

Tex. Disciplinary Rules Prof'l Conduct R. 5.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019 ...................................... 10

**Other Authorities:**

STATE BAR OF TEXAS ANNUAL REPORT (2017–2018) ....................................... 5, 9, 12

STATE BAR OF TEXAS BOARD OF DIRECTORS POLICY MANUAL (2018) .................. 15

DAVID MCCULLOUGH, JOHN ADAMS (2001) ............................................... 6

## Identity and Interest of *Amici Curiae*

The State Bar of Texas is the official professional organization of Texas lawyers, and unifies all functions necessary to assure access to the legal system and improve the delivery of legal services to the public. The following *amici* are former presidents of the State Bar of Texas:

| | | |
|---|---|---|
| David. J. Beck | Martha Dickie | Allan DuBois |
| Harper Estes | Wayne Fisher | Kelly Frels |
| Guy Harrison | Roland Johnson | Lynne Liberato |
| Lonny Morrison | Jim Parsons | Richard Pena |
| Eduardo Rodriguez | Charlie Smith | Cullen Smith |
| Frank Stevenson | Terry Tottenham | Bill Whitehurst |

The Texas Bar College was chartered by the Supreme Court of Texas in 1981 as an honorary society charged with enhancing professionalism in the practice of law through continuing legal education. The following *amici* are former chairs of the Texas Bar College:

| | | |
|---|---|---|
| Hon. David Keltner | Claude Ducloux | John C. Grace |
| Steven C. James | Cori Harbour-Valdez | Veronica Jacobs |
| Herman Segovia | | |

The State Bar of Texas Council of Chairs is a committee comprised of the chairs of the various bar sections. The following *amici* are former chairs of the Council of Chairs:

| | |
|---|---|
| P. Talmage Boston | Patrick Maher |
| Alyson Outenreath | Melissa Dorman Matthews |
| Robert M. "Randy" Roach Jr. | |

## Introduction

Lawyers serve a unique role in our justice system "as trusted agents of their clients, and as assistants to the court in search of a just solution to disputes." *Cohen v. Hurley*, 366 U.S. 117, 124 (1961). *Amici* write as longtime bar leaders to explain how the programs challenged by plaintiffs help lawyers to fulfill these roles.

Contrary to plaintiffs' claims, the challenged programs assist the State Bar of Texas both in regulating Texas attorneys and in enhancing the quality of legal services in Texas. These activities are permitted under standards enunciated by the Supreme Court. *Amici* also write to express their acute concern that dismantling the State Bar would diminish attorney competence and ethical compliance, and undermine the quality of legal services delivered to Texans.

## Summary of the Argument

*Keller* governs the permissibility of unified-bar activities. At a minimum, *Keller* authorizes activities germane to regulating attorneys to ensure their ethical compliance and improving the quality of legal services delivered to the public. The programs challenged by plaintiffs fall within these permitted activities. And dismantling these programs would imperil the quality of legal services in Texas.

## Argument

The Supreme Court addressed constitutional issues associated with unified bar associations in *Keller v. State Bar of California*, 496 U.S. 1 (1990). Plaintiffs contend the Court impliedly overruled *Keller* in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018). *Janus* involved whether public employees can be forced to subsidize a union—pay "agency fees"— "even if they choose not to join and strongly object to the positions that the union takes in collective bargaining and related activities." *Id.* at 2459–60.

*Janus* said nothing about the lawfulness of bar fees. Justice Kagan's dissent in *Janus* explicitly lists *Keller* as falling into the category of cases that "[*Janus*] does not question." *Id.* at 2498 (Kagan, J., dissenting). And, indeed, the Court has gone out of its way *not* to disturb *Keller* in its recent agency-fee decisions.

In *Harris v. Quinn*, the Court struck down an agency-fee scheme but *rejected* the argument that this would "call into question our decision[] in *Keller* . . . ." *Harris v. Quinn*, 573 U.S. 616, 655 (2014). The *Janus* majority leaned heavily on *Harris*. *See Janus*, 138 S. Ct. at 2463, 2464, 2465, 2466, 2468, 2471, 2472, 2474, 2477 (all citing *Harris*). And the majority did not dispute Justice Kagan's observation that *Janus* does not question *Keller*. Thus, *Keller* remains good law and governs this case.

Under *Keller*, the State Bar may—consistent with the First Amendment—use compulsory dues to fund activities "germane to" the goals of (1) "regulating the legal profession," and (2) "improving the quality of legal services." *Keller*, 496 U.S. at 13. Citing *Harris*, plaintiffs seek to cabin these activities to "proposing ethical codes and disciplining members." Plaintiffs' Motion at 11 (citing *Harris*, 573 U.S. at 655). Actually, the Court pointed in *Harris* to the permissibility of activities "***connected with***" ethical rules and disciplinary regulation. *Harris*, 573 U.S. at 655 (emphasis added). And it reiterated the State's interest in "improving the quality of legal services." *Id.* (citing *Keller*, 496 U.S. at 14).

1.   **The State Bar conducts numerous activities—including those under challenge—as part of its permissible mission to regulate attorneys and improve the quality of legal services in Texas.**

   A.   **The State Bar provides CLE on issues that may confront Texas lawyers—including divisive issues.**

Plaintiffs attack the State Bar's CLE department for what they contend are "ideologically-charged" programs. But the ethical rules governing Texas lawyers require competence in the practice of law. *See, e.g.*, Tex. Disciplinary Rules Prof'l Conduct Preamble ¶ 3; R. 1.01, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019). This means that lawyers must keep abreast of changes in—

   • substantive law,

- statutes affecting legal practice, and

- rules governing practice in various Texas courts.

As part of its *Keller*-permitted mission to improve the quality of legal services—and help Texas lawyers avoid violating their ethical duties and entering the disciplinary system—the State Bar offers live and online courses, webcasts, practice guides, form books, online libraries, journals, pattern jury charges, and a host of other materials. The State Bar also maintains an ethics hotline to assist lawyers with especially thorny issues. These activities—and the expenses they engender—relate directly to improving the quality of legal services provided to Texans.

During the 2017–2018 bar year, combined attendance at State Bar-sponsored CLE webcasts, online programs, video courses, and live courses exceeded 120,000. The State Bar's ethics hotline handled more than 6,000 calls during that year. Texas Bar Books sold more than 10,000 books and 6,000 subscriptions. STATE BAR OF TEXAS ANNUAL REPORT 4 (2017–2018).

That some CLE topics address "ideologically-charged" issues simply reflects the reality that Texas lawyers often find themselves representing clients embroiled in the hot-button issues of the day. Texas lawyers handle cases involving abortion rights, school prayer, the Pledge of Allegiance, immigration, and other divisive issues. This commitment by American

lawyers to represent controversial causes and clients enjoys a majestic tradition pre-dating the American Revolution. *See, e.g.,* DAVID MCCULLOUGH, JOHN ADAMS 65–68 (2001) (describing representation by Adams of British soldiers, which he later described as "one of the best pieces of service I ever rendered my country").

Just as Texas lawyers cannot—and, if our system of government is to endure, ***must not***—eschew controversial or unpopular clients and cases, so too the State Bar must provide CLE on these topics to ensure that when lawyers take such cases—no matter how divisive or controversial—they are armed with the requisite knowledge and expertise to provide competent representation to their clients.

By way of example, the State Bar offers a CLE program on litigation under the Bill of Rights. Do topics on that program concern "ideologically-charged" and divisive issues? Of course—they involve the most divisive issues in our society. But this has nothing to do with any ***political*** effort; it recognizes that lawyers practicing in these areas need ***education*** to stay current just like lawyers handling business litigation or transactions.

Plaintiffs complain about CLE programs during the 2018 annual meeting involving issues facing Hispanics, the impact of openly LGBT

judges, implicit bias, and a legislative update on proposed rulemaking under the Trump Administration. Again, plaintiffs miss the point.

Texas lawyers frequently represent Hispanic clients—and need to know issues they may face. If openly LGBT judges view certain cases differently than their peers, Texas lawyers need to know it. They also need to know how implicit bias may affect jury deliberations. And lawyers practicing administrative law need to keep abreast of proposed rulemaking under the current administration.

These are not *political* activities; they are *educational* activities on legal issues that may intersect with politics. They assist Texas lawyers in meeting the ethical requirement for competence, and they improve the quality of legal services rendered to Texans.

B. **The *Texas Bar Journal* serves as an important conduit of information to Texas lawyers.**

Plaintiffs attack the State Bar's publication of the *Texas Bar Journal*. But the journal forms a critical component of the State Bar's effort to promote ethics and competence. The most recent edition of the journal included, among other things—

- an article informing lawyers of their new ethical obligations relating to technology,

- several articles related to handling immigration matters,

- an update on amendments to the rules governing admission to the bar,

- a new ethics opinion,

- the "ethics question of the month," and

- summaries of disciplinary actions imposed on Texas attorneys.

Month after month, the *Texas Bar Journal* provides topical articles on various practice areas, ethics advice and opinions, and information about proposed and adopted rules changes. It publishes an annual update issue discussing significant developments in numerous practice areas. Some of these developments—legislative initiatives or judicial decisions—may be "ideologically-charged" and controversial. But Texas lawyers need to know about them to provide competent representation.

The *Texas Bar Journal* provides Texas attorneys with important information about their ethical obligations and the related disciplinary rules, and helps the State Bar to improve the delivery of legal services to Texans.

### C.    The State Bar provides attorney and client assistance programs.

The State Bar sponsors and funds programs for lawyers dealing with mental or physical impairments—impairments that can impede competent representation and put the public at risk. The State Bar funds the Texas Lawyers Assistance Program (TLAP) to help identify and assist impaired

lawyers. During the 2017–2018 bar year, TLAP fielded 17,717 calls and made 115 presentations to more than 10,000 people. STATE BAR OF TEXAS ANNUAL REPORT 4 (2017–2018).

The State Bar also administers the Client Security Fund to protect consumers of legal services by providing financial relief to clients whose lawyers have stolen money intended for the client or failed to refund an unearned fee. During the 2017–2018 bar year, the fund approved 148 eligible applications and disbursed more than $900,000. *Id.* at 5.

Finally, the Client-Attorney Assistance Program assists clients in resolving issues with their lawyers, and achieved an 87 percent success rate in reopening communication between counsel and client in more than 1,000 referrals. *Id.*

Plaintiffs might argue that these programs do not fit strictly within the stricture of "attorney discipline." But TLAP and CAAP help lawyers avoid potential ethical pitfalls that could result in discipline. They also enhance the quality of legal representation rendered to Texans. And the Client Security Fund helps compensate victims of ethical lapses by attorneys.

**D.    The State Bar's diversity initiatives promote ethical compliance and improve the quality of legal services.**

Plaintiffs' criticisms of the State Bar's diversity initiatives as advancing some political or social viewpoint suffer from a series of

misperceptions concerning the operation and the purpose of these programs.

First, plaintiffs ignore the Texas ethical rule prohibiting lawyers in adjudicatory proceedings from manifesting, "by words or conduct, bias or prejudice based on race, color, national origin, religion, disability, age, sex, or sexual orientation towards any person involved in that proceeding in any capacity." Tex. Disciplinary Rules Prof'l Conduct R. 5.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019).

For example, plaintiffs criticize CLE offerings relating to LGBT judges and transgender attorneys. Yet these presentations promote understanding of, and compliance with, Rule 5.08—and could help Texas lawyers avoid potential discipline. They improve the quality of legal services by helping lawyers to understand issues facing transgender lawyers or openly LGBT judges, and thereby improve the ability of counsel to communicate with—and persuade—those lawyers and judges.

Second, plaintiffs apparently operate under the misconception that these are exclusionary programs. To the contrary, these programs are open to all Texas lawyers. The undersigned counsel—a middle-aged White man— has spoken at and attended the Texas Minority Counsel Program. The Women and the Law Section has been chaired by a man. These programs may be ***targeted*** toward certain groups, but they are ***open*** to everyone. So

why direct efforts toward certain groups?

Again, plaintiffs misunderstand the State Bar's efforts to promote competence and ethical compliance. The Texas Supreme Court's creation of the Texas Bar College confirms what should be self-evident to any judge or lawyer: The greater the number of cumulative CLE hours obtained by Texas lawyers each year, the greater the improvement to the quality of legal services rendered to Texans.

In recognition of this simple equation—more CLE = better lawyers— the State Bar constantly pursues new and creative means to attract the greatest number of lawyers possible to its CLE offerings. As part of this effort, the State Bar seeks to connect with its member lawyers in every way imaginable. It connects by experience.[1] It connects by practice area. It connects by age.[2] It connects by section membership, practice area, geographic location, and a host of other factors—even their travel interests.[3]

One way the State Bar connects with attorneys is through diversity initiatives. The Texas Minority Counsel Program, for example, uses networking opportunities to attract thousands of Texas lawyers to a CLE

---

[1] The State Bar now offers a highly popular *Handling Your First* _____ CLE series targeted toward inexperienced lawyers.

[2] The State Bar offers a CLE course on issues facing aging and retiring lawyers.

[3] For example, the State Bar has produced CLE programs associated with various cruises, as a means of attracting lawyers who might not otherwise attend such programs.

event they might otherwise not attend. This isn't an ideological or political activity. It is a means of casting the widest net possible in providing Texas lawyers with CLE to promote their ethical compliance and improve their legal skills. It falls squarely within the activities permitted by *Keller*.

Finally, plaintiffs' complaint about the Ten-Minute-Mentor program is particularly perplexing. That program provides an online video bank on a host of topics relating to legal practice. A review of the highest-rated videos includes topics like:

- *Obtaining Review by the Texas Supreme Court*,

- *DWI Defense*,

- *The Divorce Interview*, and

- *Draft Your Charge Early*.

During the 2017–2018 bar year, the Ten-Minute-Mentor videos were accessed more than 36,000 times. Put another way, ***on 36,000 occasions in just 12 months, Texas lawyers or citizens obtained important legal information from some of the most accomplished and knowledgeable lawyers in Texas.*** STATE BAR OF TEXAS ANNUAL REPORT 5 (2017–2018).

Plaintiffs do not explain the nature of their objection to this program. And it's awfully hard to imagine what it could be. The Ten-Minute-Mentor program assists Texas lawyers in avoiding ethical lapses and promotes

competence by providing information necessary to improve their knowledge and skills. It complies with *Keller*.

### E. The State Bar's access-to-justice initiatives promote ethical compliance and improve both the quality of legal services and the administration of justice in Texas.

More than 5.6 million Texans qualify for civil legal aid. But inadequate resources mean that only ten percent of their legal needs are being met. The State Bar helps to fill this justice gap through initiatives that provide legal assistance to veterans, active-duty military and their families, people affected by natural disasters, victims of domestic violence and abuse, and numerous other Texans.

The ethical rules governing Texas attorneys require this effort. The rules state that Texas lawyers should "devote professional time and civic influence" on behalf of those too poor to obtain legal representation, and should "aid the legal profession" in doing so as well. Tex. Disciplinary Rules Prof'l Conduct Preamble ¶ 5, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. App. A (West 2019)

Moreover, lawyers and judges know that reducing the number of pro-se litigants vastly improves the efficiency of our court system. The presence of counsel on both sides of a dispute promotes settlement and reduces

wasted time. When both parties have lawyers, fewer fruitless arguments are raised, less irrelevant evidence is offered, and there are fewer delays.

Finally, the presence of counsel levels the playing field and improves the administration of justice. Indeed, it is difficult to envision what would improve the quality of legal services more than ensuring that litigants have lawyers. One state supreme court explained how ensuring representation on both sides of the dispute promotes justice:

> If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal.

*In the Matter of K.L.J.*, 813 P.2d 276, 280 (Alaska 1991).

### F. The State Bar's non-partisan legislative program improves the quality of legal services in Texas.

Plaintiffs attack the State Bar for its legislative program. According to plaintiffs, the mere fact that that the program is called *legislative* constitutes sufficient evidence of its ideological bent. That may be a nice sound-bite, but it is utter nonsense.

The State Bar's most recent *Friday Update*—an important component of the legislative program—provided Texas lawyers with updates on a host of proposed legislation affecting legal practice. *Keller* permits expenditures

germane to regulating the profession and improving the quality of legal services. No one could dispute that each session, the legislature considers and passes numerous statutes affecting the practice of law—statutes that affect both the disciplinary process and the quality of legal services.

As plaintiffs note, the State Bar—principally through the sections— does provide recommendations and other feedback on certain legislation. Certain areas of the law—particularly family, consumer, and criminal laws—regularly require study and amendment. The State Bar often is particularly well-positioned to advise legislators on the potential effects of proposed legislation and how that legislation may best be tailored to serve the public interest.

But the State Bar goes to great lengths to ensure that all of its interactions with the legislature comply with *Keller*. Before supporting any proposed legislation, the bar determines that the proposal meets specific criteria designed to ensure compliance with *Keller*. These requirements include verifying that the proposed measure will not be philosophically or emotionally divisive among any substantial segment of the bar, and that it "cannot be construed to advocate political or ideological positions."[4]

---

[4] STATE BAR OF TEXAS BOARD OF DIRECTORS POLICY MANUAL 76, § 8.01.03 (2018), available at https://www.texasbar.com/AM/Template.cfm?Section=Governing_ Documents1&Template=/CM/ContentDisplay.cfm&ContentID=42429.

**G.    The State Bar's sections and the Texas Bar College offer numerous programs designed to promote ethical compliance and improve the quality of legal services.**

Most Texas lawyers interact with the State Bar principally through involvement in sections or the Texas Bar College. The State Bar has 48 sections and two divisions. The smallest of these sections has 200 members, and the largest more than 10,000. In total, Texas lawyers have more than 85,000 section memberships. The College has around 4,000 members.

Together, the sections offer an astonishing array of programs and resources to promote attorney ethics and competence. Many sections provide CLE programming focused on their members' specific practice areas. Often, these section-produced programs are provided in rural areas—and frequently at no charge, or a reduced charge.

Almost all sections maintain websites and produce newsletters directed at their members practice areas. Many sections produce high-quality journals and law reviews dedicated to specific practice areas. The Litigation Section, for example, produces one of the leading journals on litigation in the country. Some sections also maintain libraries of past articles. These resources keep section members abreast of changes in the law and often provide in-depth analyses of particular issues confronting practitioners.

Many sections provide their members with regular case updates—

ensuring that Texas lawyers are aware of the very latest decisions. Some sections maintain a listserv where members can obtain input from the leading lawyers in their practice areas on especially complex issues.

Similar to the sections, the Texas Bar College provides a variety of resources for Texas attorneys to maintain competence and ethical practice. The College produces a quarterly newsletter addressing substantive legal developments and ethical issues that may arise in the practice of law. It provides all of its members with free access to the entire library of State Bar CLE articles. It produces a three-day CLE program for general practitioners. And, finally, the College promotes attorney competence and ethics by limiting membership to attorneys who agree to obtain double the required amount of CLE. Through these initiatives, the Bar College substantially furthers the cause of improving legal services to the public in Texas.

## 2. Dismantling the State Bar would risk the destruction of all these activities—and diminish the quality of legal representation in Texas.

Plaintiffs' blithe assumption that the State Bar could be dismantled without serious impact on Texas legal consumers is incorrect. To the contrary, as longtime leaders in the profession, *amici* fear that dismantling the State Bar could have devastating consequences for the citizens who depend on Texas lawyers.

Initially, every initiative discussed in this brief—from the nation's leading CLE program, to the Texas Bar Journal, TLAP, and everything else—depends on a unified bar. Mindful of what has occurred in other states that have abandoned their unified bars, we have little doubt that every program described in this brief would be at risk if the State Bar were dismantled. And neither the ethical compliance nor the professional competence of Texas attorneys will be maintained at their present levels without these programs.

If dismantling the State Bar *imperils* the continued efficacy of these many initiatives, it virtually *guarantees* the destruction of the sections and the Texas Bar College. Setting aside the many other reasons this might be true, the sections and the College would have no means of accessing their membership lists or collecting dues from their members without the State Bar. And, with very few exceptions, the sections depend on the State Bar for administrative functions. Without a unified bar, the sections and the College either would cease to exist or would become ineffectual shells of their former selves. And Texas lawyers would lose all of the previously-described education and support.

Simply by way of one "small" example, consider the Consumer and Commercial Law Section. Texas consumers need representation. The DTPA

forms an important part of the legislature's overall scheme to regulate the consumer marketplace in Texas. The section publishes a quarterly journal with in-depth articles and case updates. It sends case updates to its members. It works with the State Bar to provide a two-day CLE program devoted entirely to the practice of consumer and commercial law. And it maintains a listserv where members can obtain input from some of the most experienced consumer lawyers in the world. In short, the section is at the very heart of the effort to ensure that Texas consumers can obtain competent representation when they need it.

Unfortunately, this section is one of those that almost surely would die without the State Bar. Without the ability to lean on the State Bar for administrative and CLE support, the section would collapse.

This is just one example of the devastating ripple effect across the legal marketplace in Texas if the State Bar is dismantled. And when this effect is expanded to include practitioners in other practice areas—aviation, bankruptcy, health, immigration, intellectual property, oil & gas, and tax, just to name a few—it isn't hard to see the overall effect.

## Conclusion

Over the many years of its existence, the State Bar has been a critical component of the legal profession's regulation and the framework for the

administration of justice in Texas. The State Bar assists Texas lawyers in fulfilling their ethical obligation to improve the practice of law through a variety of processes that enhance, rather than restrict, member speech. The State Bar assembles viewpoints from across the spectrum of practices, geography, and political ideology. It carries out systematic outreach to lawyers both to inform them of pending court rule changes and legislation affecting the practice of law, and to gather their input on these matters. All of this is permissible under *Keller*. And all of it works, ultimately, to benefit the people of Texas.

Respectfully submitted,

/s/ Chad Baruch
Charles "Chad" Baruch
Texas Bar Number 01864300
chad@jtlaw.com
Randy Johnston
Texas Bar Number 10834400
randy@jtlaw.com
Johnston Tobey Baruch, PC
Post Office Box 215
Addison, Texas 75001-0215
Telephone: (214) 741-6260
Facsimile: (214) 741-6248

*Attorneys for Amici Curiae*

## Certificate of Service

The undersigned certifies that, on May 15, 2019, he sent a copy of this instrument to the following counsel of record by first-class mail:

Cameron T. Norris
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
Counsel for Plaintiffs

Thomas S. Leatherbury
Vinson & Elkins
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Counsel for Defendants

Cynthia A. Morales
Office of the Attorney General
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
Counsel for Amicus Curiae

Patrick Mizell
Debora C. Milner
Vinson & Elkins
1001 Fannin, Suite 2500
Houston, Texas 77002
Counsel for Defendants

Matthew R. Miller
500 East Coronado Road
Phoenix, Arizona 85004
Counsel for Amicus Curiae

_/s/ Chad Baruch_____
Charles "Chad" Baruch