IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TONY K. MCDONALD, JOSHUA B. HAMMER, AND MARK S. PULLIAM, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. 1:19-cv-00219-LY |
| JOE K. LONGLEY, et al., | § § | |
| *Defendants.* | § § § | |

**BRIEF OF AMICUS CURIAE
TEXAS ACCESS TO JUSTICE COMMISSION**

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................. ii

Interest of Amicus Curiae ..................................................................................................... 1

Argument .............................................................................................................................. 3

I.   The Bar's funding of the Commission easily meets the *Keller* standard
because the Commission's work is focused on "improving the quality of the
legal service available to the people of the State." ...................................................3

    A.   The duties the Texas Supreme Court placed upon the Commission
all revolve around improving the quality of legal service available
to low-income Texans.................................................................................3

    B.   Consistent with its charge, the Commission's work is focused on
improving the quality of legal service available to low-income
Texans........................................................................................................5

II.  Cutting off the Commission's sole source of funding would spell a return
of the troubling access to justice problems that prompted the Texas Supreme
Court to create the Commission nearly two decades ago. .......................................8

Conclusion ......................................................................................................................... 10

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Keller v. State Bar of California*,
 496 U.S. 1 (1990)................................................................................2, 3, 4, 5, 6, 7, 8

*Lathrop v. Donohue*,
 367 U.S. 820 (1961)..........................................................................................3, 4, 5

STATUTES AND LEGISLAITVE MATERIALS

TEX. GOV'T CODE ANN. § 81.034 (West 2018) ...............................................................3

Tex. S. Res. 616, 86th Leg., R.S., 2019 S.J. of Tex. 1244.............................................8

OTHER AUTHORITIES

Resolution of the Texas Judicial Council: Supporting Funding for Civil Legal Aid
 in Texas (Approved Sept. 14, 2018) .........................................................................8

### INTEREST OF AMICUS CURIAE

The Texas Supreme Court created the Texas Access to Justice Commission by unanimous order in 2001.  Dkt. No. 35-5, Order Establishing the Commission.  In that Order, the Texas Supreme Court recognized the following deficiencies in the then-existing framework for the provision of legal services for the low-income Texans:

- many gaps exist in developing a comprehensive, integrated statewide civil legal-services delivery system in Texas;

- many poor people in Texas are underrepresented, in that they receive limited advice from a legal-services provider when they would in fact be better served by full representation on a civil legal matter;

- inadequate funding and well-intentioned but uncoordinated efforts stand in the way of a fully integrated civil legal-services delivery system;

- achieving a committed and active justice community in Texas is essential to the effective delivery of civil legal services;

- while many organizations throughout the state share a commitment to improving access to justice, no single group is widely accepted as having ultimate responsibility for progress on the issues; and

- leadership that is accepted by the various stakeholder organizations committed to achieving full access, and empowered to take action, is essential to realizing equal justice for all in Texas.

*Id.* at 1.  Its solution to these serious problems was the Commission.  *Id.* at 2.

The Texas Supreme Court charged the Commission with the general duty to "develop and implement policy initiatives designed to expand access to and enhance the quality of justice in civil legal matters for low-income Texas residents."  *Id.*  It also tasked the Commission with various more specific duties, providing that the Commission must:

- identify and assess current and future needs for access to justice in civil matters by low-income Texans;

- develop and publish a strategic plan for statewide delivery of civil legal services to low-income Texans;

- foster the development of a statewide integrated civil legal-services delivery system;

- work to increase resources and funding for access to justice in civil matters and to ensure that the resources and funding are applied to the areas of greatest need;

- work to maximize the wise and efficient use of available resources, including the development of local, regional, and statewide coordination systems and systems that encourage the coordination or sharing of resources or funding;

- develop and implement initiatives designed to expand civil access to justice;

- work to reduce barriers to the justice system by addressing existing and proposed court rules, procedures, and policies that negatively affect access to justice for low-income Texans; and

- monitor the effectiveness of the statewide system and services provided and periodically evaluate the progress made by the Commission in fulfilling the civil legal needs of low-income Texans.

*Id.*

The funding the Commission needs to accomplish these objectives comes exclusively from the State Bar of Texas. *See id.* at 4; Dkt. No. 35-16, Declaration of Trish McAllister ¶ 52. The Commission thus has a strong interest in ensuring both that (1) the Bar remains able to collect the dues it needs to fulfill its budgetary requirements and (2) no legal barriers prevent the Bar from continuing to fund the Commission's vital access to justice work. Because Plaintiffs' claims threaten those interests, the Commission submits this amicus curiae brief to educate the Court about the critical role the Commission plays in providing access to justice in Texas and to assure the Court that the Commission's work is fully consistent with the standard announced in *Keller v. State Bar of California*, 496 U.S. 1 (1990).

ARGUMENT

I.  **The Bar's funding of the Commission easily meets the *Keller* standard because the Commission's work is focused on "improving the quality of the legal service available to the people of the State."**

In *Keller*, the Supreme Court held that state bars "may . . . constitutionally fund activities germane to th[e] goals [of regulating the legal profession and improving the quality of legal service] out of the mandatory dues of all members." 496 U.S. at 13-14.  It further clarified that "the guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'" *Id.* at 14 (quoting *Lathrop v. Donohue*, 367 U.S. 820, 843 (1961) (plurality opinion)).  Whether viewed from the perspective of the Commission's established purpose in the Texas Supreme Court's Order or its on-the-ground efforts to improve access to justice across the state, the Commission's work plainly is directed at "improving the quality of the legal service available to the people of the State." *Id.* (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)).  That renders the Bar's funding of the Commission fully consistent with the Constitution.

A.  **The duties the Texas Supreme Court placed upon the Commission all revolve around improving the quality of legal service available to low-income Texans.**

The Texas Supreme Court was well aware of the *Keller* standard when it created the Commission in 2001.  Indeed, the *Keller* standard largely parallels the similar statutory restriction in the State Bar Act, which provides that "[f]ees collected under this chapter and other funds received by the state bar may not be used for influencing the passage or defeat of any legislative measure unless the measure relates to the regulation of the legal profession, *improving the quality of legal services*, or the administration of justice." TEX. GOV'T CODE ANN. § 81.034 (West 2018)

3

(emphasis added). That is why the Texas Supreme Court charged the Commission with duties that are fully consistent with both *Keller* and the State Bar Act.

The Commission's duties are aimed at improving the quality of legal service available to low-income Texans. Both its overarching charge to "develop and implement policy initiatives designed to expand access to and enhance the quality of justice in civil legal matters for low-income Texas residents" and each of the specific instantiations of that duty listed in the Texas Supreme Court's Order, *see* Dkt. No. 35-5, Order Establishing the Commission, concern "improving the quality of the legal service available to the people of the State." *Keller*, 496 U.S. at 14 (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)).

To be sure, the Commission's focus is on the part of the population to which legal service is scarcely available and most in need of improvement. Nothing about that restricted focus violates *Keller* (or, for that matter, the State Bar Act). *Keller* plainly does not require that every expenditure of bar funds "improv[e] the quality of the legal service available" to every single resident of a state. *Id.* (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)). Rather, *Keller* counsels only that each bar program must focus on "improving the quality of the legal service available" to some set of "people of the State." *Id.* (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)). That commonsense reading of *Keller* allows for targeted solutions to specific problems. The Commission is a prime example of such a solution, as the Texas Supreme Court created it to address recognized deficiencies in the quality of legal service available to low-income Texans. *See* Dkt. No. 35-5, Order Establishing the Commission. Its efforts to combat those deficiencies "improv[e] the quality of the legal service available to the people of the State." *Keller*, 496 U.S. at 14 (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)).

**B.    Consistent with its charge, the Commission's work is focused on improving the quality of legal service available to low-income Texans.**

The Commission's on-the-ground efforts live up to the lofty goals the Texas Supreme Court set for it. The Commission's annual reports to the Texas Supreme Court detail its work in expanding access to justice for low-income Texans and confirm that its focus in deed, as well as in word, is on "improving the quality of the legal service available to the people of the State." *Keller*, 496 U.S. at 14 (quoting *Lathrop*, 367 U.S. at 843 (plurality opinion)); *see* Dkt. No. 35-12, The Commission's 2018 Report; Dkt. No. 35-13, The Commission's 2017 Report.

The Commission operates through a number of committees and task forces. Its Law School Advisory Committee "creates and promotes programs to ensure the next generation of attorneys are familiar with civil access to justice issues." Dkt. No. 35-12, The Commission's 2018 Report at 1. That committee pursues those goals through three primary initiatives. First, it coordinates an annual Pro Bono Spring Break that gives Texas law students the opportunity to spend their spring break working with legal aid organizations across the state. *Id.* Second, the committee sponsors the Access to Justice Internship Program, which provides stipends to law students who commit to serving at a legal aid organization for a specified number of hours during their time in law school. *Id.* at 2. Third, the committee partners with Texas law schools to host poverty simulations designed to "sensitize law students to the struggles that low-income Texans face in their day-to-day lives." *Id.* Together, these efforts instill in the next generation of attorneys an appreciation of the access to justice issues facing low-income Texans and a commitment to meeting those needs through pro bono work or other service.

The Commission's Legal Training Programs Committee provides high-quality training to legal aid attorneys. *Id.* at 3. As one example, it partners with Fellows from the American College of Trial Lawyers, the preeminent organization of trial lawyers in North America, to host an annual

Texas Trial Academy for Texas legal aid attorneys. *Id.* Such training directly improves the quality of legal service available to low-income Texans through the state's legal aid organizations.

The Texas Supreme Court has established various task forces for which the Commission is responsible to design and publish legal forms that self-represented litigants can use to meet their basic civil legal needs. *See id.* at 3-5. The Landlord-Tenant Forms Task Force has, for example, put together "the forms needed by low-income tenants and landlords to deal with eviction." *Id.* at 3-4. The Probate Forms Task Force has drafted "will forms that give self-represented litigants options appropriate for their stage in life," along with "global instructions relevant to all the will forms" that provide the basic information about creating and executing a will. *Id.* at 4. The Protective Order Task Force works to create and refine a form protective order kit that can be used by victims of domestic violence. *Id.* at 4-5. There are also forms task forces for other common legal issues, such as eviction and divorce. Dkt. No. 35-16, Declaration of Trish McAllister ¶ 61. By promulgating these forms, the Commission's forms task forces greatly improve the quality of legal services available to low-income Texans who cannot afford legal representation.

The Commission's Technology Committee focuses on addressing the technology needs of legal aid attorneys. Dkt. No. 35-12, The Commission's 2018 Report at 5. It provides training for legal aid attorneys on the use of various computer programs that can be utilized in their practices. *Id.* The committee also more broadly assesses the technology needs of legal aid attorneys and formulates strategies to ensure that they are met. *Id.*

The Commission's Legislative Committee "assists the Commission in developing and advocating a legislative agenda to ensure successful funding for legal aid organizations and legislative reforms that increase access to justice." *Id.* The committee educates state and national lawmakers about access to justice issues and seeks funding for legal aid organizations. *Id.* at 5-7.

The committee also advocates for various access to justice measures unrelated to funding. For example, the committee supports a bill that would remove barriers to an attorney being appointed an *ad litem* on a pro bono basis. *Id.* at 7. The committee has also sought to allow inactive bar members to practice on a solely pro bono basis. Dkt. No. 35-13, The Commission's 2017 Report at 10. And, as another example of its work, the committee has successfully secured the creation of new mechanisms for titles to real property and vehicles to be transferred upon death without the need to go through probate, thereby solving a serious access to justice problem that had affected many low-income Texans. *Id.* at 8-9. The committee's efforts to secure funding for legal aid organizations and its non-funding initiatives thus all share a common focus on improving the access to and quality of legal service for low-income Texans.

The Commission's Rules and Legislation Committee "addresses systemic access to justice issues for the poor through the creation of policies, procedures, and practices." Dkt. No. 35-18, The Commission's 2018 Report at 9. Its Self-Represented Litigants Subcommittee has drafted amendments to the Texas Code of Judicial Conduct concerning "reasonable accommodations a judge may take to afford all litigants the right to be heard" and has offered "policies on interactions with court patrons by court clerks and other court personnel." *Id.* The committee has also worked to increase awareness of limited scope representation, a useful tool that makes it easier for attorneys to represent low-income Texans for one discrete purpose. *Id.* at 9-10. The Language Access, Pro Bono, and Legal Notices Subcommittees have also pursued amendments to rules or legislation to address access to justice issues in their areas of focus. *See id.* at 10; Dkt. No. 35-13, The Commission's 2017 Report at 10-11.

The Commission also engages in significant private fundraising efforts for the state's legal aid organizations. Through its Justice for All Campaign, Champion of Justice Society, Champions

of Justice Law Firm Competition, and Champions of Justice Gala Benefitting Veterans, the Commission raised nearly $2 million for legal aid services last year.

In sum, the Commission focuses on "improving the quality of the legal service available to the people of the State" by removing barriers that block access to justice for low-income Texans and improving the quantity and quality of legal services available to them. These extensive efforts fulfill the Texas Supreme Court's charge to the Commission and are fully consistent with both the State Bar Act and the *Keller* standard.

## II. Cutting off the Commission's sole source of funding would spell a return of the troubling access to justice problems that prompted the Texas Supreme Court to create the Commission nearly two decades ago.

The Commission has rightfully received plaudits for its important work. *See, e.g.*, Tex. S. Res. 616, 86th Leg., R.S., 2019 S.J. of Tex. 1244 (Texas Senate resolution "commend[ing] the Texas Access to Justice Commission on its efforts to ensure that low-income veterans receive quality legal representation"). Even with the Commission's work, however, there remains a great need for free and reduced-fee legal services in Texas. Dkt. No. 35-16, Declaration of Trish McAllister ¶¶ 3-7. The Texas Judicial Council recently recognized that more than 5.6 million Texans qualify for legal aid. *See* Resolution of the Texas Judicial Council: Supporting Funding for Civil Legal Aid in Texas (Approved Sept. 14, 2018), http://bit.ly/2UQZhl2. Much work remains to be done for Texas to meet that need, as it currently Texas ranks 47th among the states in access to legal aid lawyers, with approximately one legal aid lawyer for every 8,000 Texans who qualify. *See id.* The reality is that many poor Texans with a legitimate need for legal assistance are still forced to navigate the legal system unrepresented.

If Plaintiffs prevail in their effort to abolish mandatory Bar dues, Texas would fall further behind in this area of critical importance. That would cut off the Bar's funding of the Commission, and both those Texans least able to access justice and the justice system as a whole would feel the

fallout. Because its funding comes exclusively from the Bar, the Commission would cease to exist in that scenario. The Commission's important work in facilitating self-represented litigants' navigation through the legal system would go undone. That would not only block access to justice for those litigants, but also gum up the works of the broader judicial system. Without the Commission's work to reduce the friction in this area, the interaction between self-represented litigants and courts would be considerably less efficient. The resulting waste of time and resources for both the litigants and the courts would benefit no one.

The Commission's public and private fundraising efforts would come to an end as well. That lifeline of funding to legal aid organizations would thus dry up. The knock-on effect would be a reduction in the number of legal aid attorneys that those organizations could afford to employ, and that would in turn directly decrease the number of low-income Texans whom those organizations could assist with legal service. The result would be fewer Texans in need being able to access justice through the provision of affordable legal service.

The elimination of the Commission's extensive training support for legal aid organizations would further increase the financial strain on those groups. Legal aid organizations would face a choice of either cutting other areas of their tight budget to make room for those training expenses or accepting a reduced level of attorney training as a financial necessity. Neither would bode well for the quantity and quality of legal services available to low-income Texans.

In short, the Texas Supreme Court created the Commission for a reason. It fulfills a unique and indispensable role in the State's access to justice framework. If the Commission ceases to exist and thus can no longer fulfill its charge "to develop and implement policy initiatives designed to expand access to and enhance the quality of justice in civil legal matters for low-income Texas

residents," both low-income Texans and the entire justice system will suffer.  Dkt. No. 35-5, Order

Establishing the Commission at 2.

## CONCLUSION

For these reasons and the reasons stated in the Defendants' responses, the Commission

respectfully submits that the Court should grant Defendants' Cross-Motion for Summary

Judgment (Dkt. No. 35), deny Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 5), and deny

Plaintiffs' Motion for Partial Summary Judgment on Liability (Dkt. No. 6).

Respectfully submitted,

BAKER BOTTS L.L.P.

By:

Macey Reasoner Stokes
State Bar No. 00788253
J. Mark Little
State Bar No. 24078869
910 Louisiana Street
Houston, Texas 77002
(713) 229-1369
(713) 229-7869 - Fax
macey.stokes@bakerbotts.com
mark.little@bakerbotts.com

ATTORNEYS FOR AMICUS CURIAE TEXAS ACCESS TO
JUSTICE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, a true and correct copy of the foregoing Brief of Amicus Curiae Texas Access to Justice Commission was served on the following counsel of record by U.S. mail and e-mail:

| | |
|---|---|
| William S. Consovoy<br>Jeffrey M. Harris<br>Cameron T. Norris<br>Samuel D. Adkisson<br>CONSOVOY MCCARTHY PARK PLLC<br>3033 Wilson Blvd., Suite 700<br>Arlington, VA 22201<br>cam@consovoymccarthy.com<br>will@consovoymccarthy.com<br>jeff@consovoymccarthy.com<br>sam@consovoymccarthy.com<br>*Attorneys for Plaintiffs Tony K. McDonald,*<br>*Joshua B. Hammer, Mark S. Pulliam*<br><br>Ken Paxton<br>Jeffrey C. Mateer<br>Ryan L. Bangert<br>Cynthia A. Morales<br>Assistant Attorney General<br>Financial Litigation and Charitable Trusts<br>Division<br>Office of the Attorney General<br>P.O. Box 12548, Mail Code 009<br>Austin, Texas 78711-2548<br>cynthia.morales@oag.texas.gov<br>*Attorneys for Amicus Curiae Texas Attorney*<br>*General Ken Paxton* | Joshua S. Johnson<br>Morgan A. Kelley<br>VINSON & ELKINS LLP<br>2200 Pennsylvania Avenue NW<br>Suite 500 West<br>Washington, D.C. 20037<br>joshjohnson@velaw.com<br>mkelley@velaw.com<br><br>Thomas S. Leatherbury<br>VINSON & ELKINS LLP<br>2001 Ross Avenue, Suite 3900<br>Dallas, Texas 75201<br>tleatherbury@velaw.com<br><br>Patrick W. Mizell<br>Deborah C. Milner<br>Vinson & Elkins LLP<br>1001 Fannin Street<br>Suite 2500<br>Houston, Texas 77002<br>pmizell@velaw.com<br>cmilner@velaw.com<br>*Attorneys for Defendants*<br>*Joe K. Longley et al.* |

J. Mark Little