## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

Tony K. McDonald, Joshua B. Hammer, and Mark S. Pulliam,

<em>Plaintiffs,</em>

v.

Joe K. Longley, Randall O. Sorrels, G. Thomas Vick, Jr., Laura Gibson, Jerry C. Alexander, Christy Amuny, Jeff Chandler, Alison W. Colvin, Derek Cook, Robert D. Crain, Alistair B. Dawson, Leslie W. Dippel, Michael Dokupil, Estrella Escobar, Victor Flores, Jarrod T. Foerster, John Charles Ginn, Shari Goldsberry, Marc E. Gravely, August W. Harris III, Angelica Hernandez, Joe "Rice" Horkey, Jr., Wendy-Adele Humphrey, Sarah Clower Keathley, Neil D. Kelly, David C. Kent, Aldo D. Lopez, Robert E. McKnight, Jr., Rudolph K. Metayer, Stephen J. Naylor, Christopher Oddo, Amie S. Peace, Sally Pretorius, Curtis Pritchard, Baili B. Rhodes, Lisa S. Richardson, Fidel Rodriguez, Jr., Carmen M. Roe, Gregory W. Sampson, Alan E. Sims, Dinesh H. Singhal, K. Nicole Voyles, Bradley C. Weber, Amy Welborn, James Wester, and James C. Woo, in their official capacities as Members of the Board of Directors of the State Bar of Texas; Seana Willing, in her official capacity as Chief Disciplinary Counsel of the State Bar of Texas; and Pablo Javier Almaguer, Noelle M. Reed, John Neal, Bruce Ashworth, Gena Bunn, Magali Suarez Candler, Teresa Acosta, Dave Obergfell, William Skrobarczyk, Vance Goss, Javier S. Vera, and Sheri Roach Brosier, in their official capacities as Members of the Commission for Lawyer Discipline of the State Bar of Texas,

<em>Defendants.</em>

**FIRST AMENDED COMPLAINT**

Civil Action No. 1:19-cv-00219-LY

Plaintiffs Tony K. McDonald, Joshua B. Hammer, and Mark S. Pulliam bring this action against Defendants for declaratory and injunctive relief and allege as follows.

## INTRODUCTION

1.      This action seeks declaratory and injunctive relief to remedy unconstitutional coerced speech and association. In order to practice law in Texas, the State requires attorneys to join, associate with, and pay dues to the State Bar of Texas. This scheme violates the First Amendment for several independent reasons.

2.      *First*, under *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), it violates the First Amendment to compel Plaintiffs and other attorneys to associate with and financially support the State Bar in order to engage in their chosen profession. There is no compelling government interest that could justify this coerced association; indeed, approximately 20 States regulate attorneys directly without forcing them to join a state bar, and there is no indication that attorneys are insufficiently regulated in those jurisdictions.

3.      *Second*, even if Plaintiffs can be compelled to join and support the State Bar for limited regulatory purposes, the Bar engages in numerous activities beyond its regulatory functions that are inherently political or ideological. For example, the State Bar: (1) engages in numerous "diversity" initiatives based on attorneys' race, gender, and sexual orientation; (2) promotes "access to justice" initiatives that, for example, seek to prevent the deportation of individuals who entered the United States without authorization through the southern border; (3) imposes a $65 "legal services fee" on certain attorneys in private practice to fund legal aid programs; and (4) operates a legislative program that drafts and advocates for the passage of legislation. There is no compelling interest that can justify coercing Texas attorneys to fund

these activities as a condition of engaging in their profession. If the Bar believes these political and ideological activities are worth pursuing, it can fund them through voluntary contributions or seek direct appropriations from the State's general fund.

4.      *Third*, assuming the State Bar can use coerced fees for limited regulatory purposes, its procedures for allowing members to opt-out of political and ideological activities are woefully inadequate. Under *Knox v. Service Employees Union*, 567 U.S. 298 (2012), an organization that collects compelled dues must require members to *opt-in* to supporting political and ideological causes, rather than charging everyone the fee by default and expecting them to *opt-out*. In direct contravention of this rule, the Bar puts the burden on members to pursue an elaborate administrative process in order to identify political activities and seek a refund of the pro rata share of the member's fees that were used for such activities. In addition, the Bar does not have an adequate appeals process for chargeability determinations and fails to provide a sufficient breakdown of its spending.

## JURISDICTION AND VENUE

5.      This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983.

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because at least one of the defendants resides in this district and all defendants reside in the State of Texas.

## PARTIES

8.      Plaintiffs Tony K. McDonald and Joshua B. Hammer are attorneys licensed to practice law in Texas and active members of the State Bar of Texas. In order to engage in their

chosen profession, Texas law requires Plaintiffs to join, associate with, and pay dues to the State Bar.

9.      Plaintiff Mark S. Pulliam is an inactive member of the State Bar. He does not currently practice law in Texas but may wish to do so in the future. Although he is on inactive status, Mr. Pulliam is required to associate with, and pay dues to, the State Bar in order to preserve his ability to practice law in Texas in the future.

10.     Defendant Joe K. Longley is the President of the State Bar and a member of the State Bar Board of Directors.

11.     Defendant Randall O. Sorrels is the President-Elect of the State Bar and a member of the State Bar Board of Directors.

12.     Defendant G. Thomas Vick, Jr. is the Immediate Past President of the State Bar and a member of the State Bar Board of Directors.

13.     Defendant Laura Gibson is a member of the State Bar Board of Directors and Chair of the Board.

14.     Defendants Jerry C. Alexander, Christy Amuny, Jeff Chandler, Alison W. Colvin, Derek Cook, Robert D. Crain, Alistair B. Dawson, Leslie W. Dippel, Michael Dokupil, Estrella Escobar, Victor Flores, Jarrod T. Foerster, John Charles Ginn, Shari Goldsberry, Marc E. Gravely, August W. Harris III, Angelica Hernandez, Joe "Rice" Horkey, Jr., Wendy-Adele Humphrey, Sarah Clower Keathley, Neil D. Kelly, David C. Kent, Aldo D. Lopez, Robert E. McKnight, Jr., Rudolph K. Metayer, Stephen J. Naylor, Christopher Oddo, Amie S. Peace, Sally Pretorius, Curtis Pritchard, Baili B. Rhodes, Lisa S. Richardson, Fidel Rodriguez, Jr., Carmen M. Roe, Gregory W. Sampson, Alan E. Sims, Dinesh H. Singhal, K. Nicole Voyles,

Bradley C. Weber, Amy Welborn, James Wester, and James C. Woo are members of the State Bar Board of Directors.

15.     As members of the State Bar Board of Directors, Defendants have responsibility for the implementation and enforcement of the statutes and policies challenged herein. *See* Tex. Gov't Code § 81.020(a) ("The governing body of the state bar is the board of directors."). The members of the Board are sued in their official capacities.

16.     Defendant Seana Willing is Chief Disciplinary Counsel of the State Bar, sued in her official capacity.

17.     The Chief Disciplinary Counsel of the State Bar serves as "administrator of the state bar's grievance procedure[s]." Tex. Gov't Code § 81.076(g). She, in conjunction with the Commission on Lawyer Discipline and Board of Directors, enforces all dues, fees, and associational requirements challenged in this suit.

18.     Defendant Pablo Javier Almaguer is Chair of the State Bar Commission for Lawyer Discipline, sued in his official capacity.

19.     Defendants Noelle M. Reed, John Neal, Bruce Ashworth, Gena Bunn, Magali Suarez Candler, Teresa Acosta, Dave Obergfell, William Skrobarczyk, Vance Goss, Javier S. Vera, and Sheri Roach Brosier are members of the State Bar Commission for Lawyer Discipline, sued in their official capacities.

20.     The Members of the State Bar Commission for Lawyer Discipline share responsibility for enforcing the statutes and procedures challenged herein. *See* Tex. Gov't Code § 81.071 ("Each attorney admitted to practice in this state and each attorney specially admitted by a court of this state for a particular proceeding is subject to the disciplinary and disability

jurisdiction of the supreme court and the Commission for Lawyer Discipline, a committee of the state bar."). The Members of the Commission for Lawyer Discipline also select the Bar's Chief Disciplinary Counsel in conjunction with the Board of Directors. Tex. Gov't Code § 81.076(g).

21.    Defendants were at all relevant times acting under color of state law in implementing the statutes and policies challenged herein.

## STATEMENT OF FACTS

### I.    The Right To Be Free From Compelled Speech and Association.

22.    The First Amendment, made applicable to the States by the Fourteenth Amendment, prohibits abridgment of the freedom of speech. That right "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). "The right to eschew association for expressive purposes is likewise protected." *Janus v. AFSCME*, 138 S. Ct. 2448, 2463 (2018) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)).

23.    When speech or association is compelled, significant "damage is done" because "individuals are coerced into betraying their convictions." *Janus*, 138 S. Ct. at 2464; *see also id.* ("Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning….").

24.    The Supreme Court has long recognized that compelled association with a state bar imposes a significant burden on attorneys' First Amendment rights. Even before *Janus*, the Court had held that mandatory state bar associations may not use compelled dues for "activities of an ideological nature" that extend beyond "the State's interest in regulating the

- 6 -

legal profession and improving the quality of legal services." *Keller v. State Bar of California,* 496 U.S. 1, 13-14 (1990).

25.     Under *Knox v. Service Employees International Union*, 567 U.S. 298 (2012), an organization that collects compelled dues must adopt procedures under which members *opt-in* to supporting political and ideological causes, rather than charging everyone the fee by default and expecting objectors to *opt-out*.

## II.     Attorneys' Compelled Association With The Texas State Bar And Compelled Funding Of Political And Ideological Activities.

26.     The State Bar of Texas is a public corporation and an administrative agency of the judicial department, operating under the administrative control of the Supreme Court of Texas. *See* Tex. Gov't Code § 81.011.

27.     The State Bar describes its mission as being "to support the administration of the legal system, assure all citizens equal access to justice, foster high standards of ethical conduct for lawyers, enable its members to better serve their clients and the public, educate the public about the rule of law, and promote diversity in the administration of justice and the practice of law."

28.     Individuals who wish to practice law in Texas are compelled to join the State Bar in order to engage in their profession. *See* Tex. Gov't Code § 81.051(b) ("Each person licensed to practice law in this state shall, not later than the 10th day after the person's admission to practice, enroll in the state bar by registering with the clerk of the supreme court.").

29.     An attorney who is eligible to practice law in Texas but is not currently practicing may move to "inactive" status. *See* Tex. Gov't Code §§ 81.052, 81.053. Inactive

members must remain members of the State Bar, and continue to pay dues, in order to preserve their eligibility to return to active status in the future.

30.     The State Bar currently has more than 102,000 active members and approximately 16,000 inactive members.

31.     Through its Office of Chief Disciplinary Counsel (CDC), the State Bar is responsible for processing complaints, conducting investigations, and handling enforcement actions against attorneys accused of misconduct.

32.     Although the State Bar receives complaints, conducts investigations and litigates disciplinary proceedings against Texas attorneys, it has no authority to directly impose discipline or sanctions. Instead, an attorney accused of misconduct is entitled to a hearing before an independent grievance committee or a state district court. The attorney may then seek appellate review before the Board of Disciplinary Appeals—an independent adjudicatory body of 12 attorneys—and, ultimately, the Supreme Court of Texas.

33.     The State Bar does not handle the admission or licensing of new attorneys. Such admissions are handled by the Texas Board of Law Examiners.

34.     The State Bar receives no funding from taxes or appropriations. It is entirely self-funded through compelled membership dues, as well as income from continuing legal education, conferences, publications, and advertising.

35.     All attorneys licensed to practice law in Texas must pay dues to the State Bar. *See* Tex. Gov't Code § 81.054. Those dues are currently $68 for attorneys licensed 0 to 3 years, $148 for attorneys licensed 4 to 5 years, and $235 for attorneys licensed more than 5 years. Dues for inactive members are currently $50 per year. In the year ending on May 31, 2017, the

Bar collected more than $20 million in mandatory dues, plus another $25 million in revenue from its other activities.

36.     Texas law also imposes an additional $65 "legal services fee" on certain attorneys as a condition of their practicing law. Tex. Gov't. Code § 81.054(j). This fee is imposed only on certain attorneys in active private practice in Texas. It is not imposed on attorneys over 70 years old or on inactive status; those who work in state, federal, or local government; those who work for certain non-profit organizations; and those who reside out of state and do not practice law in Texas. *Id.* § 81.054(k).

37.     The $65 legal services fee has nothing to do with regulating the profession or ensuring ethical conduct by attorneys. Its *sole* purpose is to fund legal services for certain groups. Half of the fees are allocated to the Supreme Court Judicial Fund, which provides civil legal services to the poor, and the other half goes to the Fair Defense Account of the state's general reserve fund for indigent criminal defense. *See id.* § 81.054(c). This fee is tantamount to a compelled charitable contribution.

38.     The State Bar has an "Office of Minority Affairs" that engages in "Minority Initiatives," which are "ongoing forums, projects, programs, and publications dedicated to our diversity efforts." Those initiatives include the Texas Minority Counsel Program, Texas Minority Attorney Program, Minority Attorneys at the Podium Project, Diversity Forum, Diversity Summit, LeadershipSBOT, Pipeline Program, Texas Spectrum, and Ten Minute Mentor Program. For example, the Texas Minority Counsel Program is a "client development, networking, and CLE event for diverse attorneys in Texas," which are defined as "minority, women, and LGBT attorneys." This program allows "diverse lawyers" to "meet one-on-one

to discuss potential outside counsel opportunities," and offers "incomparable networking events."

39.     The State Bar also maintains a Governmental Relations department that "serves as the State Bar's liaison to the Texas Legislature and other state and federal governmental entities." This department reviews thousands of bills each legislative session for their potential impact on the State Bar and the legal profession. The department also manages and coordinates the State Bar's legislative program. The Bar's 2019 legislative program includes proposed legislation on wide-ranging matters including construction law, family law, "LGBT law," "poverty law," real estate, trusts, and probate. The Bar is currently advocating for the passage of dozens of proposed bills in these areas, including one that would amend the definition of marriage in the Texas Constitution.

40.     The State Bar maintains a "Legal Access Division" that "offers support, training, publications, resource materials, and more to legal services programs and pro bono volunteers." For example, in a June 28, 2018 article, Defendant Longley (President of the State Bar) stated that he "traveled to the border to learn how we can promote access to justice and the rule of law related to the separation of immigrant families." Longley characterized this situation as a "crisis" and said that the State Bar was "uniquely equipped to address" this issue. Even though Longley was directly encouraging attorneys to oppose policies being implemented by the federal government, he claimed that "[t]his is not about politics" but about "access to justice." The Bar spends more than $1.3 million per year on Legal Access Division programs.

41.     In connection with its pro bono and "access to justice efforts," the Bar

maintains a directory of "volunteer and resource opportunities." That directory "provides a comprehensive list of training, volunteer, and donation opportunities for attorneys who would like to assist with migrant asylum and family separation cases." Every one of the relevant entries promotes a group that seeks to assist undocumented immigrants in remaining in the United States. A link to this directory was prominently included on the front page of the Bar's website.

42.     The programs discussed above are inherently political and ideological. The Bar's "diversity" initiatives are premised on the assumption that is appropriate to offer certain services targeted at individuals of a particular race, gender, or sexual orientation. The Bar's legislative program is self-evidently political, as it is directly proposing and supporting the passage of legislation. And the Bar's pro bono and "access to justice" programs are effectively mandatory charitable contributions that are exacted from attorneys as a condition of engaging in their chosen profession.

43.     In *Keller*, the Supreme Court made clear that "activities of an ideological nature" by a state bar may not be funded through coerced dues. 496 U.S. at 14. The Texas State Bar purports to comply with that mandate by asserting (with a straight face) that *none* of its activities—including its legislative advocacy, pro bono and "access to justice" programs, "legal services" fee, and diversity initiatives—are of an "ideological" nature. Put differently, the Bar contends that 100% of every aspect of its advocacy is fully chargeable to its members, even those who may strongly disagree with its activities.

44.     The Bar's Policy Manual provides that if any member thinks the Bar has engaged in political or ideological activity, he or she must go through an elaborate

- 11 -

administrative appeal process that may—if successful—result in a refund of the pro rata share of the member's fees that were used for the non-chargeable activity. *See* TX Bar Policy Manual § 3.14. Refunds are issued at the "discretion" of the Bar's Executive Director. *Id.* That is, the Bar puts the burden on members to object to, and litigate, any challenges to the use of compelled dues for political or ideological purposes, and even then any refunds are discretionary.

**III.    Plaintiffs' Compelled Subsidization Of The Bar's Activities.**

45.    Plaintiff Tony K. McDonald practices law in Austin, where he runs a private law firm. He joined the Bar in November 2012. In May 2018, he paid $300 of bar dues: $235 of basic dues plus the $65 legal services fee.

46.    Mr. McDonald objects to being compelled to associate with, and fund, the State Bar as a precondition to practicing his profession. He would not have joined the State Bar if he were not compelled to do so, nor would he financially support the Bar's activities. He particularly objects to being compelled to subsidize activities unrelated to the Bar's regulatory functions, such as its "diversity" initiatives, its legislative program, its advocacy of pro bono and "access to justice" programs, and its "legal services" activities. He believes that access to justice is an important issue, but he would prefer to support private organizations of his own choosing rather than being compelled to support organizations or causes of the Bar's choosing.

47.    Plaintiff Joshua B. Hammer practices law in Texas. He serves as of counsel to a nonprofit legal organization and as an editor at an online news and opinion publication. He joined the Bar in November 2016. In May 2018, he paid bar dues of $68.

48.     Mr. Hammer objects to being compelled to associate with, and fund, the State Bar as a precondition to practicing his profession. He would not have joined the State Bar if he were not compelled to do so, nor would he financially support the Bar's activities. He particularly objects to being compelled to subsidize activities unrelated to the Bar's regulatory functions, such as its "diversity" initiatives, its legislative program, and its advocacy of pro bono and "access to justice" programs. He believes that any such activities should be funded through private contributions, or through the State's general fund, not by coercing attorneys to fund these programs as a precondition to practicing their profession.

49.     Plaintiff Mark S. Pulliam joined the Bar in 2010 and is currently on inactive status. He does not currently practice law but may do so in the future. Mr. Pulliam must pay $50 per year in inactive dues (paid most recently in May 2018) to preserve his ability to return to active status so that he may practice law in Texas in the future.

50.     Mr. Pulliam objects to being compelled to associate with, and fund, the State Bar in order to preserve his ability to practice law in the future. He would not have joined the State Bar if he were not compelled to do so, nor would he financially support the Bar's activities. He particularly objects to being compelled to subsidize activities unrelated to the Bar's regulatory functions, such as its "diversity" initiatives, its legislative program, and its advocacy of pro bono and "access to justice" programs. He believes that any such activities should be funded through private contributions, or through the State's general fund, not by coercing attorneys to fund these programs as a precondition to practicing their profession.

## COUNT I
### 42 U.S.C. §§ 1983, 1988
### Violation of the First Amendment
### (Compelled Membership in State Bar)

51.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

52.     By requiring Plaintiffs to join, associate with, and financially support the State Bar as a precondition to engaging in their chosen profession, Defendants are violating Plaintiffs' rights to free speech and association under the First Amendment, as incorporated through the Fourteenth Amendment.

53.     There is no compelling interest in forcing attorneys to associate with, and pay dues to, the State Bar as a condition of practicing law in Texas. Approximately 20 States regulate and license attorneys directly without compelling them to join a bar association, and there has never been any suggestion that the legal profession is insufficiently regulated in those jurisdictions.

54.     As a result of this compelled speech and association, Plaintiffs are suffering irreparable injury for which there is no adequate remedy at law. Absent intervention by this Court, Plaintiffs will continue to suffer irreparable injury.

55.     Defendants have enforced the unconstitutional laws and policies challenged here while acting under color of state law.

## COUNT II
### 42 U.S.C. §§ 1983, 1988
### Violation of the First Amendment
### (Compelled Support for Activities Beyond Regulation of Attorneys)

56.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

- 14 -

57.     In the alternative, the First Amendment, as incorporated by the Fourteenth Amendment, prohibits Defendants from compelling Plaintiffs to subsidize political and ideological activities that extend beyond the Bar's core regulatory functions.

58.     The State Bar uses compelled dues to engage in numerous activities that are inherently political or ideological.

59.     The State Bar has an "Office of Minority Affairs" and engages in numerous "diversity" initiatives that are based on attorneys' race, gender, or sexual orientation.

60.     Through its "Access to Justice" division, the State Bar widely promotes pro bono programs that often involve hotly contested issues. For example, the Bar has facilitated efforts to obtain attorneys for non-citizens who illegally entered the United States through the southern border—a hotly charged issue in which the Bar has aligned itself in support of migrants and against the federal government.

61.     The Bar has a Government Relations department that oversees a "Legislative Program." Through this program, the Bar drafts and advocates for the passage of legislation on wide-ranging matters such as construction law, family law, "LGBT law," "poverty law," real estate, trusts, and probate. The Bar is currently advocating for the passage of dozens of proposed bills in these areas, including one that would amend the definition of marriage in the Texas Constitution.

62.     Attorneys in active private practice in Texas, such as Plaintiff McDonald, must also pay an annual $65 "legal services fee," which is effectively a compelled charitable contribution in support of certain causes.

63.     All of the activities described above are inherently political or ideological.

64.     There is no compelling interest in forcing attorneys to associate with, and fund, these highly political and ideological programs and causes as a precondition of practicing law in Texas.

65.     As a result of this compelled speech and association, Plaintiffs are suffering irreparable injury for which there is no adequate remedy at law. Absent intervention by this Court, Plaintiffs will continue to suffer irreparable injury.

66.     Defendants have enforced these unconstitutional policies under color of state law.

## COUNT III
### 42 U.S.C. §§ 1983, 1988
### Violation of the First Amendment
### (Procedures for Identifying Non-Chargeable Activities)

67.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

68.     To the extent the Bar engages in political or ideological activities, it must implement appropriate procedures to ensure that individuals are not compelled to support and associate with activities with which they disagree.

69.     The Bar's procedures for separating chargeable and non-chargeable expenses are inadequate to protect the important constitutional rights at stake.

70.     The First Amendment, as incorporated by the Fourteenth Amendment, requires the Bar to use procedures in which members must *opt-in* before their funds may be used to subsidize its political and ideological activities.

71.     Yet the Bar instead uses convoluted opt-out procedures that place the burden on objecting members to identify and challenge non-chargeable activities through an elaborate

administrative appeal process. And, even at the end of that process, any refunds for non-chargeable activities are issued only at the discretion of the Bar's Executive Director.

72.    The Bar also does not have an impartial appeals process and does not place contested fees into escrow pending resolution of appeals.

73.    The Bar's procedures are inadequate to ensure that members are not coerced into funding the Bar's political and ideological activities.

74.    Defendants adopted these unconstitutional policies and took these unconstitutional actions while acting under color of state law.

<u>**COUNT IV**</u>
**28 U.S.C § 2201**
**Declaratory Judgment Act**

75.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

76.    Plaintiffs are entitled to a declaratory judgment that Texas law compelling them to join, associate with, and financially support the State Bar violates the First and Fourteenth Amendments.

77.    In the alternative, Plaintiffs are entitled to a declaratory judgment that forcing them to associate with and financially support the State Bar's political and ideological activities—such as its diversity programs, its "access to justice" initiatives, its separate "legal services" fee, and its legislative program—violates the First and Fourteenth Amendments.

78.    Plaintiffs are entitled to a declaratory judgment that the State Bar's opt-out, objection, and chargeability procedures violate the First and Fourteenth Amendments.

79.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and provide the following relief:

A.     A declaratory judgment that the provisions of Texas law compelling Plaintiffs to join, associate with, and financially support the State Bar as a condition of engaging in their chosen profession violate the First and Fourteenth Amendments;

B.     In the alternative, a declaratory judgment that forcing Plaintiffs to associate with and financially support the State Bar's political and ideological activities—such as its diversity programs, its "access to justice" initiatives, its separate "legal services" fee, and its legislative program—violates the First and Fourteenth Amendments;

C.     A declaratory judgment that the State Bar's procedures for ensuring that members are not compelled to subsidize political and ideological activities violate the First and Fourteenth Amendments;

D.     A permanent injunction prohibiting Defendants from taking any actions to implement or enforce the unconstitutional policies;

E.     A preliminary injunction granting the relief specified above during the pendency of this action;

F.     Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988 and all other applicable laws; and

G.     All other further relief to which Plaintiffs might be entitled.

Respectfully submitted,

_/s/ Cameron T. Norris_
William S. Consovoy
Jeffrey M. Harris
Cameron T. Norris
Samuel D. Adkisson
Dated: May 31, 2019                    CONSOVOY MCCARTHY PLLC
3033 Wilson Blvd., Suite 700
Arlington, VA 22201
(703) 243-9423

_Counsel for Plaintiffs_

## CERTIFICATE OF SERVICE

I certify that on May 31, 2019, I electronically filed the foregoing with the Clerk of the Court

for the U.S. District Court for the Western District of Texas by using the Court's CM/ECF system,

which will send notification of the filing to the following:

Thomas S. Leatherbury
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
tleatherbury@velaw.com

Joshua S. Johnson
Morgan A. Kelley
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
joshjohnson@velaw.com
mkelley@velaw.com

Patrick W. Mizell
Deborah C. Milner
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, TX 77002
pmizell@velaw.com
cmilner@velaw.com

*Counsel for Defendants*

May 31, 2019

*/s/ Cameron T. Norris*
CAMERON T. NORRIS
*Counsel for Plaintiffs*

23