IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2020 MAY 29  PM 4: 05

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____

| | | |
|---|---|---|
| TONY K. MCDONALD, JOSHUA B. HAMMER, AND MARK S. PULLIAM, PLAINTIFFS, | § § § § | |
| V. | § § | CAUSE NO. 1:19-CV-219-LY |
| RANDALL O. SORRELS, LARRY P. MCDOUGAL, JOE K. LONGLEY, LAURA GIBSON, BRITNEY E. HARRISON, ANDRES E. ALMANZAN, JERRY C. ALEXANDER, KATE BIHM, REBEKAH STEELY BROOKER, LUIS M. CARDENAS, ALISON W. COLVIN, DEREK COOK, ROBERT D. CRAIN, CHRISTINA DAVIS, ALISTAIR B. DAWSON, LESLIE DIPPEL, MICHAEL DOKUPIL, VICTOR FLORES, JARROD T. FOERSTER, LAURA GIBSON, JOHN CHARLES GINN, SHARI GOLDSBERRY, MARC E. GRAVELY, AUGUST W. HARRIS III, JOE "RICE" HORKEY, JR., WENDY-ADELE HUMPHREY, MICHAEL K. HURST, NEIL D. KELLY, DAVID C. KENT, ALDO D. LOPEZ, YOLANDA CORTES MARES, ROBERT E. MCKNIGHT, JR., STEPHEN J. NAYLOR, AMIE S. PEACE, SALLY PRETORIUS, CARMEN M. ROE, ADAM T. SCHRAMEK, DAVID K SERGI, ALAN E. SIMS, DINESH H. SINGHAL, JASON SMITH, SANTOS VARGAS, G. MICHAEL VASQUEZ, K. NICOLE VOYLES, AMY WELBORN, JAMES WESTER, JAMES C. WOO, AND DIANE ST. YVES, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE BOARD OF DIRECTORS OF THE STATE BAR OF TEXAS, DEFENDANTS. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the court in the above-styled cause are the parties' cross-motions for summary judgment, responses, replies, *amicus* briefs, and exhibits.[1] On August 1, 2019, the court held a hearing on the motions at which all parties were represented by counsel. Having considered the motions, responses, replies, *amicus* briefs, the parties' summary-judgment proof, argument of counsel, post-hearing submissions, case file, and applicable law, the court renders the following order.

***Jurisdiction and venue***

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant Section 1983 of Title 42 of the United States Code. This court has subject-matter jurisdiction under Sections 1331 and 1343 of Title 28 of the United States Code, and venue is proper in this district because at least

---

[1]  Plaintiffs' Motion for Partial Summary Judgment on Liability filed March 25, 2019 (Doc. #6); Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment on Liability filed May 13, 2019 (Doc. #33); Plaintiffs' Reply in Support of Motion for Partial Summary Judgment on Liability filed May 31, 2019 (Doc. #63); Defendants' Cross-Motion for Summary Judgment filed May 13, 2019 (Doc. #35); Plaintiffs' Response in Opposition to Defendants' Cross-Motion for Summary Judgment filed May 31, 2019 (Doc. #65); Defendants' Reply in Support of Cross-Motion for Summary Judgment filed June 18, 2019 (Doc. #75); Brief *Amicus Curiae* of Goldwater Institute in Support of Plaintiffs' Motion for Preliminary Injunction (Doc. #39); Brief *Amicus Curiae* Texas Attorney General Ken Paxton in Support of Plaintiffs' Motion for Partial Summary Judgment on Liability filed May 14, 2019 (Doc. #40); Texas Legal Ethics Counsel's *Amicus Curiae* Brief filed May 17, 2019 (Doc. #49); Brief *Amicus Curiae* of Former Presidents of the State Bar of Texas, Forms Chairs of the Texas Bar College, and Former Chairs of the State Bar of Texas Council of Chairs filed May 20, 2019 (Doc. #53); Brief of *amicus Curiae* Texas Access to Justice Commission filed May 20, 2019 (Doc. #54); and Brief *Amici Curiae* of Concerned Lawyers of Color (Doc. #84).

one of the defendants resides in this district and all defendants reside in the State of Texas. *See* 28

U.S.C. § 1391(b)(1).

***Factual background***

Texas requires all lawyers licensed to practice in the state to enroll in, and pay annual

membership fees to, a statewide bar. *See* Tex. Gov't Code §§ 81.051, 81.054, 81.102. The Texas

Legislature established the State Bar of Texas (the "Bar") in 1939 as "an administrative agency of

the Judicial Department of the State." State Bar Act § 2, *reprinted in* 2 Tex. B.J. 128, 128 (1939).

The operations and responsibilities of the Bar are governed by statute, along with the Bar's internal

rules and policies. The State Bar Act (the "Act") mandates that all attorneys licensed to practice law

in Texas be members of the Bar. The Bar "is a public corporation and an administrative agency of

the judicial department" of Texas government and is subject to "administrative control" by the Texas

Supreme Court. *See* Tex. Gov't Code § 81.011(a), (c).

The Act specifies the Bar's purposes as follows:

(1) to aid the courts in carrying on and improving the administration of justice;

(2) to advance the quality of legal services to the public and to foster the role of the legal

profession in serving the public;

(3) to foster and maintain on the part of those engaged in the practice of law high ideals and

integrity, learning, competence in public service, and high standards of conduct;

(4) to provide proper professional services to the members of the state bar;

(5) to encourage the formation of and activities of local bar associations;

3

(6) to provide forums for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform, and the relationship of the state bar to the public; and

(7) to publish information relating to the subjects listed in Subdivision (6).

*Id.* at § 81.012.

The Bar's members elect the Bar's officers and the majority of the members of the Bar's Board of Directors. *Id.* at §§ 81.019(b), 81.020(b). Almost half of the Bar's annual revenue comes from membership fees, and the Texas Supreme Court and the Bar's Board of Directors share responsibility for setting the fee amount. *See id.* at §§ 81.022, 81.054(a). The Board may increase fees by up to 10% once every six years. *Id.* at § 81.022(a-4). All other fee increases are subject to a referendum vote by the Bar's members. *Id.* at § 81.022(a-3). The annual membership fees are currently $68 for active members licensed less than three years; $148 for active members licensed between three and five years; $235 for active members licensed for at least five years; and $50 for inactive members. Members 70 years of age and older are exempt from paying membership fees. The Bar has not raised annual membership fees since 1991, and remains the lowest among the states with integrated bars.[2]

In 2003, the Texas Legislature amended the Act to require non-exempt Texas lawyers to pay a $65 legal-services fee in addition to the membership fee. *Id* at. § 81.054(c)-(d), (j)-(k). The Bar does not receive or control that fee. *Id.* at § 81.054(c)-(d). The Texas Supreme Court distributes the

---

[2] An integrated bar is defined as an official state organization requiring membership and financial support of all attorneys admitted to practice in that jurisdiction. It has two facets which set it apart from a voluntary bar association–official organization by authority of the state and compulsory membership. *See* Tex. Gov't Code § 81.102.

legal-services fees to the Texas Comptroller, who allocates half to the Supreme Court Judicial Fund to fund civil legal services for the indigent and the other half to the Fair Defense Account of the state's general-revenue fund for indigent-criminal-defense programs. *Id.* at § 81.054(c).

The Texas Legislature periodically conducts "sunset" reviews of the Bar to determine "whether a public need exists" for the Bar's continued existence, including "whether less restrictive or alternative methods of performing any function that the agency performs could adequately protect or provide service to the public." Tex. Gov't Code § 325.011. The Bar has undergone sunset review four times, the last in 2017, when the Texas Legislature voted to continue the Bar's existence until the next sunset review in 2029. *See* S.B. No. 302 (2017).

Plaintiffs Tony K. McDonald and Joshua B. Hammer are attorneys licensed to practice law in Texas and active members of the Bar. Plaintiff Mark S. Pulliam is an inactive member of the Bar. Plaintiffs filed suit against Defendants, all of whom are members of the State Bar of Texas Board of Directors, in their official capacities only, seeking declaratory and injunctive relief to remedy alleged unconstitutional coerced speech and association in violation of the First and Fourteenth Amendments of the United States Constitution. Plaintiffs assert that the mandatory requirement that attorneys in Texas must join, associate with, and pay dues to the Bar violates their First Amendment right to freedom of speech and association. *See* 42 U.S.C. § 1983. Plaintiffs seek a declaratory judgment that Texas law compelling them to join, associate with, and financially support the Bar violates the First and Fourteenth Amendments. *See* 28 U.S.C. § 2201. Plaintiffs further seek attorney's fees and costs. *See* 42 U.S.C. § 1988.

Plaintiffs' motion for partial summary judgment on liability asserts that the current structure of the Bar violates their First Amendment rights in three ways: (1) by compelling membership in,

and financial support for, the Bar in violation of Plaintiffs' First Amendment right to freedom of speech and association; (2) by compelling Plaintiffs to support the Bar's activities beyond attorney regulation in violation the First Amendment; and (3) and by implementing procedures for identifying non-chargeable expenses in violation the First Amendment. Defendants' cross-motion for summary judgment on all of Plaintiffs' claims asserts that Plaintiffs have failed to raise any plausible constitutional violations.

### Arguments

Plaintiffs argue that under *Janus v. American Federation of State, County, & Municipal Employees*, 138 S. Ct. 2448 (2018), an organization that collects compelled dues must adopt procedures under which members opt in to supporting political and ideological causes, rather than charging everyone the fee by default and expecting objectors to opt out. Defendants argue that *Lathrop v. Donohue*, 367 U.S. 820 (1961) and *Keller v. State Bar of California*, 496 U.S. 1 (1990), control, holding that mandatory bar membership and mandatory bar fees do not violate the First Amendment. Defendants further assert that Plaintiffs' reliance on *Janus* is misplaced, because *Janus*'s reassessment of whether a state's interests in maintaining labor peace and avoiding nonmember free riding on unions' collective-bargaining efforts justify compelled payments from nonmembers does not undermine the United States Supreme Court's endorsement of the state interests in professional regulation and legal-service quality served by integrated bars.

### Summary-judgment review

"Summary judgment is required when 'the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists

when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). A fact is material if "its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5th Cir. 2015). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

On cross motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party, and determining for each side whether judgment may be rendered in accordance with the Rule

56 standard. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal

citation and quotation omitted); *Shaw Constr. v. ICF Kaiser Engrs., Inc.*, 395 F.3d 533 fn. 8 & 9 (5th

Cir. 2004).

***Analysis***

> *Counts One and Two*

In Counts One and Two of Plaintiffs' First Amended Complaint, Plaintiffs assert that

compelling membership in and financial support for the Bar and compelling Plaintiffs to support the

Bar's activities beyond attorney regulation violates Plaintiffs' First Amendment right to freedom of

speech and association. *See Janus*, 138 S. Ct. at 2463–64. Plaintiffs acknowledge that the United

States Supreme Court upheld compulsory state bars in *Keller*, but they argue that the Court did so

only by relying heavily on *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which

Plaintiffs argue the Court explicitly overruled in *Janus*. *See* 138 S. Ct. at 2478–79. Plaintiffs argue

in the alternative that even if *Keller* remains good law, nothing in *Keller* authorizes a state to compel

bar membership when the bar engages in political or ideological activities.

Defendants argue that *Lathrop* and *Keller* foreclose Plaintiffs' claims by squarely holding

that the First Amendment permits states to adopt integrated bars supported by compulsory

membership fees to further the state's interests in "regulating the legal profession or 'improving the

quality of the legal service available to the people of the State.'" *Keller*, 496 U.S. at 14 (quoting

*Lathrop*, 367 U.S. at 843). Defendants further argue that contrary to Plaintiffs' contentions, *Janus*

did not overrule *Keller*, and integrated bars may engage in activities that some members may view

as "political or ideological" in nature so long as they advance the legitimate state interests recognized

in *Keller*.

In *Lathrop*, the plaintiff claimed that Wisconsin's establishment of an integrated bar with compulsory membership fees violated his First Amendment rights of freedom of association and free speech. 367 U.S. at 821–23. The Supreme Court concluded that Wisconsin's integrated bar did not violate the First Amendment's guarantee of freedom of association, reasoning that a state may constitutionally require attorneys to pay dues to a state bar "in order to further the State's legitimate interests in raising the quality of professional services," even when an integrated bar "engages in some legislative activity," as long as "the bulk of State Bar activities serve the function . . . of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State." *Id.* at 843. Concluding that the record was insufficiently developed to provide a "sound basis" for deciding whether the integrated bar violated the plaintiff's right to free speech, the *Lathrop* Court declined to resolve that issue. *Id.* at 845–48.

However, *Keller* did resolve the free-speech issue left open by *Lathrop*. The *Keller* plaintiffs claimed that the integrated California State Bar's "use of their compulsory dues to finance political and ideological activities . . . with which they disagree violate[d] their rights of free speech." 496 U.S. at 9. The Court held that lawyers "may be required to join and pay dues to the State Bar," and articulated "the scope of permissible dues-financed activities in which the State Bar may engage." *Id.* at 4. The Court concluded that integrated bars "are justified by the State's interest in regulating the legal profession and improving the quality of legal services." *Id.* at 13. *Keller* held that state bars may use mandatory membership fees to "fund activities germane to those goals," but may not use mandatory fees to "fund activities of an ideological nature which fall outside of those areas of activity." *Id.* at 14. Therefore, under *Keller*, integrated state bars' use of membership fees complies with the First Amendment if the "expenditures are necessarily or reasonably incurred for the purpose

9

of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'" *Id.* (quoting *Lathrop*, 367 U.S. at 843). *Keller* acknowledges that determining on which side of that constitutional line a particular expenditure falls "will not always be easy," but the Court explained that "the extreme ends of the spectrum are clear": although mandatory fees may not be used for advancing "gun control or nuclear weapons freeze" initiatives, they may be used for "activities connected with disciplining members of the Bar or proposing ethical codes for the profession." *Id.* at 15–16.

*Janus* did not disturb the binding holdings of *Lathrop* and *Keller.*[3] *Janus* addressed First Amendment issues applicable only to public-sector employees. 38 S. Ct. at 2478. The Court held that arrangements whereby a governmental entity and a labor organization agree to require government employees to pay fees that are used by the union to negotiate how governmental funds are spent, and in what amounts, implicate the First Amendment in ways distinct from agency fees in the private sector. Public-sector fees involve "the government . . . compel[ling] a person to pay for another party's speech," on matters involving "the budget of government" and "the performance of government services." *Id.* at 2467, 2473. The Court also indicated that public unions raise particular First Amendment concerns that are not raised by integrated state bars, noting that collective bargaining by public unions has a special "political valence" that the Court in *Abood* did not appreciate at the time. *Janus*, 138 S. Ct. at 2483. Private-sector agency fees raise no such issues.

---

[3] The United States District Court for the Eastern District of Louisiana also has concluded that *Janus* did not overrule *Lathrop* and *Keller. See Boudreaux v. La. State Bar Ass'n*, No. 2:19-cv-11962, slip op. at 55-56 (E.D. La. Jan. 13, 2020), *appeal docketed.* No. 20-30086 (5th Cir. Feb. 10, 2020). *See also Fleck v. Wetch*, 937 F.3d 1112, 1118 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 1294 (Mar. 9, 2020).

Like *Keller* and *Lathrop*, this case involves mandatory membership in a bar association, not a public-sector union.

Although Plaintiffs contend that *Keller* relies heavily on *Abood*, the Supreme Court decided *Keller* principally in the context of rejecting the contention that the California State Bar's "status as a regulated state agency exempted it from any constitutional constraints on the use of its dues." 496 U.S. at 10. *Keller* merely drew an "analogy" between integrated state bars and labor unions. *Id.* at 12. *Janus*'s reassessment of the state interests that *Abood* concluded justified agency fee arrangements did not undermine *Keller*'s recognition of the very different state interests in professional regulation and legal-service quality served by integrated bars. *See id.* at 13–14.

Moreover, the majority opinion in *Janus* did not address *Keller* or respond to the dissent's assertion that *Keller* was a "case . . . involving compelled speech subsidies outside the labor sphere [that] today's decision does not question." 138 S. Ct. at 2498 (Kagan, J., dissenting). *Keller* and *Lathrop* directly control under the facts of this case, and therefore bind this court. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Additionally, the Supreme Court's decision in *Harris v. Quinn*, 573 U.S. 616 (2014), confirms that *Keller* fits within the "exacting scrutiny" framework applied in *Janus*. *Harris* applied "exacting scrutiny" in holding that states could not constitutionally charge non-public employees agency fees. *See id.* at 648–51. As later explained by *Janus*, exacting scrutiny requires that a compelled subsidy "serve a compelling state interest that cannot be achieved through means

significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465 (quoting *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 310 (2012)). *Harris* explicitly considered whether the exacting-scrutiny framework would disturb its prior holding in *Keller* that states may require lawyers to pay fees to fund bar activities furthering the "State's interest in regulating the legal profession and improving the quality of legal services." *Harris*, 573 U.S. at 655 (quoting *Keller*, 496 U.S. at 14). The Court answered no, holding that *Keller* "fits comfortably within [the exacting-scrutiny] framework" applied in *Harris* and that its decision in *Harris* was "wholly consistent with [the Court's] holding in *Keller*." *Id.* at 656. Thus, the court finds no basis for holding that *Janus* overrules *Keller*.

Having determined that *Keller* applies, the court will next address whether the Bar's challenged activities meet the *Keller* standard. *Keller* held that integrated bars "are justified by the State's interest in regulating the legal profession and improving the quality of legal services available to the people of the State," *id.* at 13; thus, state bars may use mandatory membership fees to "fund activities germane to those goals," so long as they do not "fund activities of an ideological nature which fall outside of those areas of activity." *Id.* at 14. The question is not whether the challenged activity is "political or ideological" in the abstract, but whether the challenged activity is "germane to" the state interests that justify integrated bars' establishment of "regulating the legal profession and improving the quality of legal services." *Id.* at 13; *see also United States v. United Foods, Inc.*, 533 U.S. 405, 414 (2001) (under *Keller*, lawyers can "be required to pay moneys in support of activities . . . germane to the reason justifying the compelled association"); *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 716 (7th Cir. 2010) (question is "whether challenged expenditures . . . are reasonably related to the constitutionally relevant purposes of [the mandatory] association").

"The purpose of the State Bar of Texas is to engage in those activities enumerated at [Section] 81.012 of the State Bar Act. The expenditure of funds by the State Bar of Texas is limited both as set forth at [Section] 81.034 of the State Bar Act and in *Keller*." Board Policy Manual § 3.14.01 ("Policy Manual"). The court finds that the following Bar activities Plaintiffs challenge comply with the *Keller* standard because they further Texas's interest in professional regulation or legal-service quality improvement.

*Lobbying.* Members of the Bar's voluntary, subject-matter sections coordinate all lobbying activities without compensation from the Bar for their efforts. The Bar follows a detailed, multi-step process to ensure that its legislative activities comply with the requirements of the State Bar Act and *Keller*. In addition, the Bar maintains a policy against engaging in legislative activities that "carry the potential of deep philosophical or emotional division among a substantial segment of the membership of the bar." Policy Manual § 8.01.03(c). Participating in legislative activities such as seeking to amend or repeal unconstitutional laws benefits the legal profession and improves the quality of legal services because it reduces the risk that lawyers, their clients, members of the public, or government officials will rely on laws that judicial decisions have rendered invalid. To date no person–Plaintiffs included– have raised an objection under the Bar's protest procedure from the time of its adoption in 2005 until the filing of Plaintiffs' suit.

*Access to Justice Programs.* The Texas Supreme Court established the Texas Access to Justice Commission in 2001 in response to findings by a statewide planning group that many poverty-stricken people in Texas are underrepresented, and that gaps exist in developing a comprehensive, integrated statewide civil-legal-services-delivery system in Texas. The Texas Supreme Court's order creating the Commission expressly provides that it is prohibited from using

Bar funds "for influencing the passage or defeat of any legislative measure unless the measure relates to the regulation of the legal profession, improving the quality of legal services, or the administration of justice and the amount of the expenditure is reasonable and necessary." Tex. Gov't Code § 81.034.

In addition, the preamble to the Texas Disciplinary Rules of Professional Conduct urges attorneys to be "mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance." Tex. Disciplinary R. Prof'l Conduct preamble ¶ 5, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013). The Bar advances Texas' interest in professional regulation by taking steps to assist lawyers in fulfilling their "ethical responsibility to provide public interest legal service." Tex. Disciplinary R. Prof'l Conduct 6.01 cmt. 5.

*Diversity Initiatives*. Texas has a long history of discrimination in the legal profession and legal education. *See, e.g.*, *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 866 (5th Cir. 1993) (en banc) (noting "Texas' long history of discrimination against its black and Hispanic citizens in all areas of public life"). The Bar's diversity-related initiatives seek to reduce those barriers and promote a fairness and equity among lawyers help to build and maintain the public's trust in the legal profession and the judicial process as a whole, advancing Texas's interests in professional regulation and improving the quality of legal services.

*Continuing Legal Education*. The Bar's Continuing Education programs assist Bar members in satisfying minimum continuing legal education requirement in furtherance of the members' professional duty to maintain the requisite knowledge of a competent practitioner. *See* Tex. State Bar R. art. XII, § 6, *reprinted in* Tex. Gov't Code Ann., tit. 2. subtit. G, app. A (West 2013); Tex.

Disciplinary R. Prof'l Conduct 1.01 cmt. 8. The programs' fees aid in funding the Bar's operations, without which the Bar would likely increase its membership fees. The Bar regularly publishes disclaimers stating that the opinions expressed by speakers in continuing legal education programs "do not necessarily reflect opinions of the State Bar of Texas, its sections, or committees."

*Bar Journal.* The Bar publishes the *Texas Bar Journal*, providing articles regarding "legal matters and the affairs of the [] Bar and its members." State Bar R. art. IX. The Bar is required to publish information of interest to the legal profession, including notices of disciplinary actions and amendments to evidentiary and procedural rules. *See, e.g.*, Tex. R. Disciplinary P. 6.07; Tex. Gov't Code §§ 22.108(c), 22.109(c). The *Texas Bar Journal* aims to "report [on] matters objectively" and to feature articles expressing "[v]arious viewpoints," including the "opinions of people differing with the State Bar and/or Bar leaders." Policy Manual § 7.05.02. Each issue includes a disclaimer making clear that publication of any article or statement is not to be deemed an endorsement of the views expressed therein. Like the continuing legal education programs, the *Texas Bar Journal* advances the interest of professional regulation and improving legal-service quality by keeping Bar members up-to-date on developments in the law and the legal profession. *Cf. Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 529 (1991) (rejecting First Amendment challenge to expenditures on union's statewide journal).

*Advertising. Keller* authorizes expenditures to inform lawyers and the public regarding the Bar's programs and the Bar's role in regulating the legal profession and advancing the quality of legal services. *See Kingstad*, 622 F.3d at 718–19 (upholding state bar public image campaign). *See also Gardner v. State Bar of Nev.*, 284 F.3d at 1043 (9th Cir. 2002). Indeed, the Bar's advertising activities are "highly germane to the purposes for which the State Bar exists," *Gardner*, 284 F.3d at

15

1043, because they inform lawyers and the public about the Bar's programs and the Bar's role in furthering those interests.

The court concludes that the $65 legal-services fee added by the Texas Legislature in 2003 is not subject to *Keller* because it is not used to fund any Bar expenditures, but rather is used by the Texas Supreme Court and the Texas Indigent Defense Commission to promote legal services for the indigent. *See* Tex. Gov't Code § 81.0549(c)–(d). Even if *Keller* applies, the fee satisfies *Keller* because—like the Bar's access-to-justice programs—promoting legal services for the indigent is "germane to" the state's interests in regulating the legal profession and improving the quality of legal services. *Keller*, 496 U.S. at 13–14.

### Count Three

In Count Three, Plaintiffs assert that the Bar's implementation of procedures for identifying non-chargeable expenses violate the First Amendment because the Bar has failed to adopt the precise procedures established by the Supreme Court in *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986). The court notes, however, that *Keller* did not address the question of whether integrated bars can adopt "alternative procedures" to prevent bar members from being compelled to fund non-chargeable expenses. *See Keller*, 496 U.S. at 17. Having previously concluded that the Bar's procedures ensure that all of its expenditures comply with *Keller*, the court further concludes that the Bar's existing policies and procedures achieve the objective of procedural safeguards in the First Amendment by ensuring that "the government treads with sensitivity in areas freighted with First Amendment concerns." *Hudson*, 475 U.S. at 303 n.12.

The Bar provides members with advance, detailed notice of its proposed expenditures, along with several opportunities to object to those expenditures before they occur. Bar members have

multiple opportunities to object to proposed expenditures before they occur–none of which Plaintiffs have undertaken–including, but not limited to, (1) at the annual public budget hearing required under Tex. Gov't Code § 81.022(b), (2) at the annual Bar Board meeting at which the budget is approved under Policy Manual § 3.02.03, and (3) under the Policy Manual's protest procedure, which allows members to "object to a proposed or actual expenditure," Policy Manual § 3.14.02. In addition, members can object to proposed legislative activities and participate in the Legislative Policy Subcommittee meeting on the Bar's proposed legislative program. Because the Bar has adequate procedural safeguards in place to protect against compelled speech and because mandatory Bar membership and compulsory fees do not otherwise violate the First Amendment, Plaintiffs' claim that the Bar unconstitutionally coerces them into funding allegedly non-chargeable activities without a meaningful opportunity to object necessarily fails as a matter of law.

***Conclusion***

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment on Liability filed March 25, 2019 (Doc. #6) is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment filed May 13, 2019 (Doc. #35) is **GRANTED**.[4]

---

[4] Having granted summary judgment in favor of Defendants, the court need not address Plaintiffs' Motion for Preliminary Injunction filed March 25, 2019 (Doc. #5). Accordingly, it is **ORDERED** that Plaintiffs' Motion for Preliminary Injunction filed March 25, 2019 (Doc. #5) is **DISMISSED**.

A Final Judgment shall be rendered subsequently in this cause.

SIGNED this ___29th___ day of May, 2020.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE